ZILLMER and wife, Plaintiffs in error, v. ZILLMER and others, Defendants in error.*

*November 30, 1959—January 5, 1960.*

* Motion for rehearing denied, without costs, on March 8, 1960.

For the plaintiffs in error there were briefs by *Winton & Winton* of Shell Lake, and oral argument by *Ward Winton*.

For the defendants in error there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *E. E. Omernik*.

FAIRCHILD, J.   In *Greef v. Greef* (1959), 6 Wis. (2d) 269, 94 N. W. (2d) 625, we noted with approval a tentative draft of the Restatement, Conflict of Laws, which proposed recognition of three bases for jurisdiction over the custody of children: (1) Domicile of the child within the state, (2) physical presence of the child within the state, and (3) personal jurisdiction over the parties contending for custody.   In the present circumstances, Wisconsin meets the second and third tests and Kansas at the time of the divorce judgment met the first and third.   A *habeas corpus* proceeding is appropriate in Wisconsin for the adjudication of legal custody.   *Bellmore v. McLeod* (1926), 189 Wis. 431, 207 N. W. 699; *State ex rel. Hannon v. Eisler* (1955), 270 Wis. 469, 71 N. W. (2d) 376; sec. 48.15, Stats.

The next question is whether the Kansas judgment was *res judicata,* or whether the Wisconsin court could, or should have made a fresh determination whether custody of the mother or of the grandparents would promote the best interests of the children.   It would seem, upon general principles, that since the Kansas court had jurisdiction of the subject matter and of the parents, its decision would be conclusive.

The grandparents contend that the Kansas judgment is not *res judicata* because they were not parties to the action in Kansas.   This argument suggests that the grandparents had a personal right to custody and control of the children which could not be dealt with by a court not having personal jurisdiction over them.   It is true that the supreme court of

the United States has held that a second state need not recognize the custody decree of the first state where the first state did not have personal jurisdiction over the parent being deprived of custody. *May v. Anderson* (1953), 345 U. S. 528, 534, 73 Sup. Ct. 840, 97 L. Ed. 1221. Although the children were in the immediate care and control of the grandparents when the Kansas judgment was entered, the circumstances do not suggest that the children had been abandoned by the parents, nor that the grandparents in any other way acquired personal rights in the nature of parental rights. As far as parental rights were concerned, the adjudication in Kansas settled the matter.

The grandparents also contend that the issue of the welfare of the children was before the circuit court, notwithstanding the Kansas judgment. They are correct, of course, in pointing out that the welfare of the child is the controlling consideration in custody matters. *Bellmore v. McLeod, supra; Pollock v. Pollock* (1956), 273 Wis. 233, 243, 77 N. W. (2d) 485.

Whether in the absence of a change in circumstances the Kansas judgment on custody is binding on the Wisconsin court by reason of the constitutional requirement that full faith and credit be given has been expressly left undecided by the United States supreme court. *State ex rel. Halvey v. Halvey* (1947), 330 U. S. 610, 67 Sup. Ct. 903, 91 L. Ed. 1133; *Kovacs v. Brewer* (1958), 356 U. S. 604, 78 Sup. Ct. 963, 2 L. Ed. (2d) 1008. Nevertheless, it has been the rule in this state that a substantial change in circumstances must be established in order to warrant a change in the custody of children. *State ex rel. Hannon v. Eisler, supra.*

The grandparents assert that a judgment as to custody may also be modified because of facts existing but not disclosed to the court when the original order was made. They cite 17A Am. Jur., Divorce and Separation, p. 31, sec. 838, which supports their position with the explanation that the public interest in promoting the welfare of the child has fre-

quently been allowed to temper the harsh application of the rule of *res judicata,* but indicates that some courts do not agree. It is logical that the interest of the child and of the public in the child's welfare should not be concluded by the failure of the parents to bring relevant and important facts to the attention of the court. From the record before us, it appears that the mother's mental illness, her restoration to capacity, and the presence of the children in the care of the grandparents were all brought to the attention of the Kansas court. It does not appear whether any of the details of her illness were disclosed. It may be true that the Kansas court would have been aided by more-searching inquiry into the prognosis of the mother's illness. The facts presented, however, did at least suggest the question of whether the mother's illness might affect her fitness to have custody.

In any event, even if under some of the principles contended for by the grandparents the Wisconsin court is not bound by the Kansas judgment, we think that as a matter of discretion, the Wisconsin court should defer to the Kansas court in these circumstances. Little more than one week elapsed between the Kansas judgment and the commencement of the *habeas corpus* proceeding here. It would have been more orderly to have fully presented the question of custody to the Kansas court. It has not been shown nor suggested, that any provision of Kansas law or procedural rules would have prevented the presentation of the medical testimony to the Kansas court, either before judgment, or upon an application for reopening and reconsideration thereof. If the Kansas court would not have recognized the standing of the grandparents to bring the facts before it, it undoubtedly would have recognized the standing of the father of the children to do so. It is evident that he was willing to cooperate with his parents; he traveled from Washington, D. C., where he is now employed, to be a witness in the proceeding in Wisconsin. He admitted receiving notice of

the divorce action and employing counsel to appear for him. He offered no explanation why he had not opposed the award of custody before the Kansas court.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.

The following opinion was filed March 8, 1960:

PER CURIAM (*on motion for rehearing*). Counsel for the grandparents, plaintiffs in error, again forcefully urges that the judgment subjects the children to great danger.

Counsel asks that we remand the case for the appointment of a guardian *ad litem* and (at the expense of plaintiffs in error) of medical experts, and that if such experts desire to examine the mother, she come to Wisconsin for such examination at the expense of plaintiffs in error. The fundamental difficulty with the suggestion is that it contemplates, in effect, a new trial in the Wisconsin circuit court of an issue which was decided, even if not upon presentation of all the evidence, in the Kansas district court. This seems particularly inappropriate where the action in Wisconsin was commenced little more than one week after the Kansas judgment, where the mother, the party entitled to custody under the Kansas judgment, would be compelled to fight her battle at a great distance from her home, and where the doctors who observed and treated her, and the medical records are far away in Kansas.

Further reflection has not altered our conclusion that the question of custody ought to be decided in the Kansas court, and counsel has not attempted to show that the law of Kansas would prevent further consideration there. Because of the concern for the welfare of the children engendered by the opinion of the medical witness, however, we have concluded that it will be an appropriate exercise of the power of the Wisconsin court to permit the children to remain in the temporary custody of the grandparents

pending institution and disposition of an application to the Kansas court for modification of its judgment in so far as it relates to custody. This will necessitate modifying our mandate so as to reverse the judgment of the circuit court and to give directions to the circuit court so as to effectuate the purpose just mentioned as follows: The children are to remain in the temporary custody of the grandparents for a period of sixty days from the filing of the remittitur from this court. If, within that time, plaintiffs in error shall have made satisfactory proof before the circuit court that either they, or Herman L. Zillmer, or all of them, have made an appropriate application to the district court of Saline county, Kansas, for the modification of the portion of its judgment providing for custody of the children, then the circuit court shall permit the plaintiffs in error to retain temporary custody of the children until such time as the district court denies the application, or modifies its judgment. The circuit court may make reasonable provisions for Mary Louise Zillmer's visiting the children. If the period of sixty days elapses without proof that the said application has been made, the circuit court is to reinstate its judgment of April 3, 1959, awarding custody to Mary Louise Zillmer. If the application is made but the district court declines to modify its judgment, or if the circuit court at any time finds that the application for modification is not being diligently prosecuted, then the circuit court is to reinstate its said judgment. If the district court in Kansas modifies its judgment with respect to custody, then the circuit court is to enter a judgment herein not inconsistent with the judgment of the district court as modified.

Accordingly, our mandate herein is amended so as to read:

Judgment reversed; cause remanded for further proceedings not inconsistent with the memorandum on rehearing filed herein. No costs allowed to either party in this court.