## AUDREY P. FISH v. JOHN C. FISH.

159 N. W. (2d) 271.

May 24, 1968—No. 40,881.

---

[4] Minn. St. 1957, § 260.08 (since repealed).

*Douglass, Bell & Donlin* and *Kenneth J. Rohleder,* for appellant.
*Newcome, Wallace & Newcome* and *Jack C. Wallace,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Plaintiff, Audrey Fish, brought an action for divorce against defendant, John Fish, on January 14, 1965. Defendant answered, but later withdrew his answer on the condition that the final decree contain the provisions of a stipulation agreed to between the parties.

The stipulation provided that plaintiff be awarded custody of four of the parties' children: Sheri, born April 12, 1947; Peggy, born December 20, 1950; Kathryn, born June 29, 1952; and Thomas, born June 7, 1959. Defendant was to be awarded custody of Nancy, born November 18, 1948. The stipulation provided visitation rights to each party on one evening each week; every other weekend; and 4 weeks each year during the summer months. During the 4-week summer visitation, the parties were to be granted the right "to remove the minor children in each other's custody from the state provided the party in custody be furnished, in advance, an itinerary of such trip." Defendant was to pay $150 monthly alimony plus $75 per month support for each child in plaintiff's custody. Plaintiff was to be awarded the parties' homestead. The final divorce decree, dated February 21, 1966, incorporated and approved the terms of the stipulation.

After leaving the homestead, defendant moved into a two-bedroom apartment. His daughter Nancy shares the apartment with him. He visited Tommy often, taking him skiing, ice skating, camping, and, as he put it, doing other things "you can do with a little boy." Apparently because the girls often had other things they would rather do, defendant seldom visited them. Admittedly there was not a close relationship between defendant and the girls.

On October 11, 1966, plaintiff, together with all the children in her custody except Sheri, flew to California to establish a residence there. Sheri, who had previously gone to live with her maternal grandmother so that she could more easily continue her education, stayed in Minnesota.

Plaintiff did not inform defendant that she intended to move to California. She did not do so, she said, because she found it difficult to converse with defendant. She claims that she told her mother on the day of departure to notify defendant of the move, but, for one reason or another, defendant did not learn plaintiff's California address until she sent him a postcard, postmarked November 8, 1966. He knew plaintiff had departed, but apparently thought she was on a vacation. Plaintiff returned to Minnesota shortly after leaving in order to get furnishings, clothes, her car, and other things. While in Minnesota she did not contact defendant.

Soon after plaintiff left, defendant, on advice of counsel, discontinued alimony and support payments. He had made all required payments up until that time.

Plaintiff and the children returned to Minnesota for a visit at Christmas time in 1966. While plaintiff was here, defendant exercised his visitation rights, spending a good deal of time with Tommy. He also made personal service on plaintiff of a motion seeking amendment of the final decree to award him custody of the four children in plaintiff's possession and to relieve him of his alimony and support obligations. Plaintiff responded with a motion asking that defendant be held in contempt for failing to obey the decree; that, alternatively, defendant be compelled to pay the alimony and support arrearages; and that the decree be amended to allow plaintiff to take the children out of the state.

Much of the evidence adduced at the hearing on these motions concerned plaintiff's fitness for the care and custody of the children. Defendant testified that on many occasions Tommy was dirty when he showed up for his visits. There was also evidence that Peggy and Kathy, while in plaintiff's custody, were often absent from school. Plaintiff explained these absences as the result of respiratory illnesses and denied that Tommy was dirty when he visited defendant. Her testimony in this respect was corroborated by several other witnesses who testified that the Fish children were always clean and well-behaved. These witnesses described plaintiff as a good housekeeper and a good mother. She apparently taught the girls to cook and sew and had been a 4-H leader and Sunday school teacher.

There was considerably less evidence concerning defendant's fitness for custody. Plaintiff said that defendant swore at her and threatened her in front of the children. On the other hand, she admitted that defendant loved the children. Several persons, many of them plaintiff's witnesses, testified that defendant had a good relationship with the children.

At the conclusion of the hearing, the trial judge made oral findings of fact. He found both plaintiff and defendant fit to have custody of the children, although he stated that both preferred some of the children over others. He concluded that it would be in the best interests of Kathryn, Sheri, and Peggy to remain with the plaintiff, but in the best interests of Tommy to be placed in defendant's custody.

The trial judge also found that plaintiff's move to California was made without defendant's knowledge and was primarily motivated by a desire to put the children beyond defendant's reach, and that, while the stipulation did not have a provision expressly prohibiting removal of the children to another state, the parties clearly considered visitation a very important right. He concluded that the removal was wrongful.

In an order dated April 21, 1967, the trial court amended the divorce decree, awarding defendant custody of Tommy and relieving him of the obligation of support as to all children save Sheri for the period from October 11, 1966, to April 1, 1967. Support after the latter date was to be continued as provided in the original decree for the children remaining in plaintiff's custody. Defendant was not relieved of his alimony obliga-

tion for the period after plaintiff left Minnesota. Both parties received visitation rights, including 2 months during the summer, with respect to the children in the other party's custody. Finally, the order give plaintiff permission to keep the children in her custody outside Minnesota.

Plaintiff appeals from this order. She contends that the trial court erred in awarding custody of Tommy to defendant and in relieving defendant of his support obligation for the months following her departure to California.

■ Minn. St. 518.18, the provision governing revision of prior custody orders, reads:

"The court may afterward, from time to time, on the petition of either parent, revise and alter such order concerning the care, custody and maintenance of the children, or any of them, and make such new order concerning them, as the circumstances of the parents and the benefit of the children shall require."

In matters of custody the trial court is vested with a wide discretion, and its determination will not be upset unless there is a clear abuse of that discretion. Schultz v. Schultz, 266 Minn. 205, 123 N. W. (2d) 118. However, in proceedings to modify a decree, the discretion is not unlimited for it is to be exercised "with great caution and only upon clear proof of facts showing that the circumstances of the parties are markedly different from those in which they were when the decree was rendered." Larkin v. Larkin, 261 Minn. 414, 417, 113 N. W. (2d) 75, 77.

The trial court's discretion is further limited by the often-repeated rule that ordinarily it is better to leave children of tender years with their mother. In Eisel v. Eisel, 261 Minn. 1, 110 N. W. (2d) 881, a child who was 8 at the time of appeal had been in his father's custody for 4 years. Both parents had since remarried. The mother petitioned for custody of the child, but the trial court retained custody in the father. In reversing, we followed earlier holdings to the effect that children should have as much of the companionship of their mother as possible because there is no satisfactory substitute for her care and nothing so helpful as her love.

The doctrine was expressed even more strongly in Meinhardt v. Mein-

hardt, 261 Minn. 272, 276, 111 N. W. (2d) 782, 784, where we said that only in cases where the mother was unfit to have custody of the children or unable to adequately care for them have we upheld awards to the father. See, also, Newman v. Newman, 179 Minn. 184, 228 N. W. 759.

The trial court's award of Tommy's custody to defendant is somewhat difficult to reconcile with the foregoing principles. The removal of the children to a distant place clearly satisfies the Larkin requirement that a decree should be modified only when circumstances have changed markedly. However, we are still confronted with the principle that the mother should be given custody of young children unless she is unfit or unable to care for them. On any reasonable assessment of the evidence one must conclude, as the trial court did, that plaintiff is fit to have the custody of the children. There is no evidence that she will be unable to provide for them. If it were not for other facts and circumstances in this case it would appear that precedent might require a reversal of the award.

The principle that the custody of young children is ordinarily best vested in the mother, vital and established as it may be, is "distinctly subordinate" to the "controlling principle" that the overriding consideration in custody proceedings is the child's welfare. Aske v. Aske, 233 Minn. 540, 541, 47 N. W. (2d) 417, 418; Christianson v. Christianson, 217 Minn. 561, 15 N. W. (2d) 24. Bearing this in mind, we are convinced that, under the circumstances of this case, the trial court did not abuse its discretion in placing Tommy in his father's custody.

Clearly, there is a very close relationship between Tommy and defendant. According to the record, Tommy and his father engage in many activities. These shared activities promote Tommy's welfare and development by providing him with the companionship necessary if he is to give expression to his youthful energies. Although plaintiff is doubtless a good mother, it is questionable whether she can supply this kind of companionship. Nor is it likely that he can obtain it from other members of plaintiff's household. It must be remembered that Tommy has no brothers and his youngest sister is 7 years older than he. Furthermore, he is now approaching 9 years of age and is on the threshold of the years

in which his father's companionship will become of increasing importance.

It is true that the award here in question will separate Tommy from the children in plaintiff's household. It is desirable in custody decrees to place the children under one roof. Schultz v. Schultz, *supra*. However, geographical separation of the children is inevitable in this case, for Nancy is already in defendant's custody and Sheri, while in plaintiff's custody, resides in Minnesota. Thus, Tommy is as much united with his sisters here as he would be in California.

Furthermore, we cannot say under the circumstances here that Tommy will not receive much of the love and attention which a mother presumptively offers. Defendant's 64-year-old mother will move in with defendant to take charge of the household. With the exception of some high blood pressure, she is, apparently, in good health. Unless her relationship with Tommy differs materially from the relationship of most grandmothers with their young grandchildren, we may assume that she will provide him with a good deal of love and affection. Moreover, his sister Nancy lives with him and Sheri is near at hand. In addition, under the visitation rights, Tommy may spend two months in the summer with his mother and his other sisters, so we cannot anticipate that he will not receive the affectionate feminine attention he wants and needs. It appears undisputed that he will receive love and companionship from his father, so important to a boy of his age. It is our opinion that the award of the trial court as to Tommy was in his best interests and within the discretionary power of the court, and not in conflict with our previous decisions with respect to custody in the mother.

Finally, it is to be noted that in any event, the principle presumptively vesting the mother with custody of young children was instituted in cases quite different from this one. Ordinarily, divorced parents will live in the same general area. Since a father with easy access to his son can provide him with companionship even though the son does not live with the father, a court in the ordinary case can assure the son of companionship by granting the father liberal visitation rights. Thus, in the ordinary case a young boy who resides with his mother can, at one and the same time, have the advantages of both his mother's presumed love and attention and

his father's companionship. In such cases it would be rare indeed that a court would be justified in granting custody to the father. But here Tommy cannot have both advantages. He can enjoy his mother's love and attention only at the expense of a substantial loss of his father's companionship. Since this case thus differs significantly from the cases out of which the principle arose, we cannot unequivocally accept the principle as controlling in this case.

An examination of the record satisfies us that the trial court exercised much care and consideration in arriving at the custody decision under the difficult circumstances of this case. Some discretionary power must remain in that court in conflicts between parents as to custody, and the facts in each case must be weighed carefully to determine what the best interests of the child require. We find no abuse of discretion in the award of Tommy's custody to defendant under the circumstances present here.

■   Plaintiff's second contention is that the trial court erred in relieving defendant of his support obligation for the period from October 11, 1966, to April 1, 1967.

For many years it was the rule in Minnesota that a father was relieved from paying support for the period during which the mother kept the child outside the jurisdiction of the court which had granted custody. Eberhart v. Eberhart, 153 Minn. 66, 189 N. W. 592; State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N. W. (2d) 13. But in Michalson v. Michalson, 263 Minn. 356, 116 N. W. (2d) 545, the court, while not rejecting the foregoing cases, limited their application. In Michalson the mother was given custody of the children subject to the right of reasonable visitation by the father. The decree did not in terms preclude removal of the children from the state. The mother later married an army sergeant and, with the children, moved with him to Japan. She did not get a court order permitting her to remove the children. However, there was evidence that the father was aware that the family might leave the state and did not object. He stopped paying when the mother and children left, but the trial court ordered him to pay. This court affirmed, stating that cases such as Eberhart and Sterling apply only if the mother wrongfully or maliciously deprives the father of visitation, or if the father is not informed of the removal or whereabouts of the child. Plaintiff con-

tends that the trial court's denial of support was erroneous when judged in the light of Michalson.

The trial court found that plaintiff's removal of the children was inconsistent with the visitation provisions of the original decree and was motivated primarily by a desire to deprive defendant of his visitation rights. If either of these findings is not contrary to the evidence, the Michalson test is clearly met, and the denial of support must be affirmed.

The trial court's conclusion that the removal was inconsistent with the visitation provisions of the original decree is abundantly supported by the evidence. The decree incorporated the visitation provisions contained in the stipulation. Those provisions quite specifically and elaborately govern visitation rights. Quite clearly, the parties attached great importance to those rights. In this context, an abrupt and unannounced removal of the children seems clearly inconsistent with the obvious intent of the visitation provisions. Those provisions are very likely much different from those in Michalson, where, for all that appears, there was nothing more than the customary, unbargained-for grant of such rights.

The specific terms of the visitation provisions reinforce the conclusion that removal of the children is inconsistent with those provisions. The stipulation specifically provides that the party exercising the visitation privileges may remove the children from the state during the 4-week summer visitation period. This provision clearly shows that the parties were aware of the problem of removal of the children. They felt it necessary to confer specific authority to remove in a doubtful case. Thus the very silence of the visitation provisions relative to permanent removal of the children, especially when coupled with the importance which the parties attached to visitation rights, is a strong indication that the provisions were not intended to confer the right to remove the children from the state permanently.

Plaintiff's rather secretive method of removing the children indicates that she probably thought defendant could use the visitation provisions to block the move. She admittedly did not tell defendant that she intended to leave. Her excuse for not telling him—that it was difficult to converse with him—is rather weak, as it would have taken few words to inform him that she was leaving the state with the children. Nancy, the daughter

in defendant's custody, was not told in advance of plaintiff's plans to leave. Plaintiff informed her mother of her plans only a few days before her departure. Her actions thus attest that the removal was inconsistent with the visitation provisions.

Since there is no error in either the award of custody or denial of support, the judgment is affirmed. No costs or disbursements allowed to any party.

Affirmed.