## In the Matter of the WELFARE of Carl Otis MULLINS.

### No. 50185.

Supreme Court of Minnesota.

Sept. 12, 1980.

---

Arthur J. Erickson, Minneapolis, for appellants.

Kuduk & Walling and Wright S. Walling, Janet L. Englund, Minneapolis, for respondent.

SHERAN, Chief Justice.

This appeal arises from a petition for a finding of dependency or neglect filed in the Hennepin County District Court by appellants Earl and Anne Krolick on behalf of their foster child, Carl Otis Mullins, against that child's natural father, respondent Carl E. Mullins. Appellants' action was precipitated by an August 25, 1978, order of the Superior Court of San Diego, California authorizing the removal of their foster child from Minnesota and his placement in the home of his great aunt in San Diego. A temporary restraining order enjoining the child's removal issued from the Hennepin County District Court on September 1, 1978, and a temporary injunction was granted on

September 5, 1978. On May 1, 1979, the district court dissolved the injunction and dismissed the petition, concluding that California retained jurisdiction. No trial on the merits has been had on the substantive merits of appellants' petition in neglect and dependency. Their appeal to this court is therefore limited solely to the question of jurisdiction. We affirm the judgment of the district court.

On July 29, 1975, the Superior Court of San Diego, California, finding that the conviction and incarceration of respondent for the murder of his wife rendered their five year-old child Carl Mullins without a parent or guardian available to exercise proper parental control, adjudged Carl Mullins dependent within the meaning of § 600(a) of the California Welfare and Institutions Code and placed him under the supervision of the Director of the San Diego County Department of Public Welfare. For current enactment, *see* Cal.Welf. & Inst.Code § 300(a) (West Cum.Supp.1980).[1] Following a study by the San Diego County Department of Public Welfare, the Superior Court determined that the best interests of the child would be served by his placement in the home of his maternal aunt and uncle in Minneapolis. *See* Cal.Welf. & Inst.Code § 726(c) (West Cum.Supp.1980).[2] Accordingly, the child arrived in Minnesota in early September of 1975. In ordering the child's placement in Minnesota, however, the Superior Court expressly reserved jurisdiction, *see* § 607 of the California Welfare and Institutions Code now codified at Cal.

Welf. & Inst.Code § 301 (West Cum.Supp. 1980),[3] decreeing that annual dependency review hearings be held in California. The court further arranged that the Hennepin County Welfare Department would supervise the child on its behalf and file quarterly assessments with the San Diego County Department of Public Welfare. The assessments were in fact conducted and the reports forwarded as requested. Likewise, hearings to review the child's placement were held in California in the late summers of 1976, 1977 and 1978. Following each hearing, the court issued an order continuing the status of Carl Mullins as a dependent child. By 1978, Carl's father had been paroled and reintegrated into the San Diego community, and in the judgment of the San Diego Welfare Department, was capable of providing for his now eight year old son. To facilitate the ultimate rapprochement of parent and child, the Superior Court at the 1978 dependency hearing ordered Carl's removal from Minnesota and his placement in the home of a paternal great aunt in San Diego. Apprized of this disposition, Carl's foster parents, the Krolicks, filed a petition in the Hennepin County District Court for an order enjoining his removal and for a finding of neglect or dependency under Chapter 260 of the Minnesota statutes. The procedural meanderings described above and this appeal followed thereafter.

The disposition of this case depends on the construction we afford to the Uniform Child Custody Jurisdiction Act [UCCJA], applicable provisions of which we adopted

---

1. Cal.Welf. & Inst.Code § 300(a) provides:
"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:
"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

2. Cal.Welf. & Inst.Code § 726(c) provides:
"In all cases wherein a minor is adjudged a ward or dependent child of the court, the court may limit the control to be exercised over such ward or dependent child by any parent or

guardian and shall by its order clearly and specifically set forth all such limitations, but no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts:
\* \* \* \* \* \*
"(c) That the welfare of the minor requires that his custody be taken from his parent or guardian."

3. Cal.Welf. & Inst.Code § 301 provides:
"The court may retain jurisdiction over any person who is found to be a dependent child of the juvenile court until such ward or dependent child attains the age of 21 years."

by judicial fiat in *In re Petition of Giblin,* 304 Minn. 510, 232 N.W.2d 214 (1975) and which the legislature enacted in toto in 1977. *See* Minn.Stat. § 518A.01–.25 (1978 & Supp.1979). The UCCJA, promulgated by the American Bar Association in 1968 and thus far adopted by the legislatures of 35 states, attempts to minimize the hardships visited upon children through divorce or other forced separations by reducing the opportunities for interjurisdictional controversies over child custody. *See generally Uniform Child Custody Jurisdiction Act* § 1; Minn.Stat. § 518A.01 (1978).

Appellants, in bringing their action in the Hennepin County District Court, sought a determination that Minnesota, to the exclusion of California, was the "home state" of their foster child,[4] or alternatively, that the child has such "significant connections" with Minnesota as to afford this state primary jurisdiction.[5] This interpretation would render California without jurisdiction to enforce its dependency decree ordering the removal of the child.

The district court, agreeing that the UCCJA governed the disposition of the case, concluded that because the Superior Court placed the child out of state pursuant to a finding of dependency and maintained its interest through quarterly assessments and annual hearings, it did not intend the child's sojourn to be permanent. Although the continuing presence of the child in appellants' home might suggest a basis for jurisdiction, the strength of the child's connections with California required a contrary disposition. *See* Minn.Stat. § 518A.03, subd. 1(b) (1978) quoted in note 5 *supra*. *See also Erickson v. Erickson,* 300 Minn. 559, 220 N.W.2d 487 (1974), *Fish v. Fish,* 280 Minn. 316, 159 N.W.2d 271 (1968) and cases cited therein for the proposition that lower courts dealing with the issue of child custody and control are vested with broad discretion and should not be reversed on appeal unless an abuse is clearly shown.

We agree with the district court that the analytical distinction between custody decrees arising from divorce and those resulting from dependency supports the retention of primary jurisdiction by the State of California and precludes any assertion of primary jurisdiction by the State of Minnesota. Although dependency custody decrees are indeed included within the ambit of the UCCJA, the Act itself is largely intended to address the problems resulting from interjurisdictional divorce proceedings. *See generally* Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207 (1969). Unlike a dependency order, a typical divorce decree setting forth terms of child custody does not contemplate active supervision by the issuing court. Thus, when the parties to the decree move out of state, their nexus with that court attenuates. Should the need for modification or enforcement of the decree arise, once the child resides in the new locality for six months, the UCCJA permits a transfer of jurisdiction. The issuance of a divorce decree governing custody in one state followed by the move of the custodial parent to another state results in the new place of residence becoming the child's "home state" for the purposes of the Act. In contrast, a dependency adjudication involves a continuing relationship between the child and the court. The relationship does not attenuate over time but continues as the court periodically assesses

---

4. Section 518A.03, subd. 1(a)(1) provides: "A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: (a) this state (1) is the home state of the child at the time of commencement of the proceeding * * *."

"Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consec-

utive months * * *." Minn.Stat. § 518A.02(e) (1978).

5. Minn.Stat. § 518A.03, subd. 1(b) permits this state to "assume jurisdiction because (1) the child and his parents * * * have a significant connection with [the] state, and (2) there is available in [the] state substantial evidence concerning the child's present or future care, protection, training and personal relationships."

possible reestablishment of the family unit. Both Minnesota and California recognize that one of the purposes of a dependency decree "is to create a temporary remedy with the ultimate goal of returning the child to the natural parents." *In re the Welfare of Solomon*, 291 N.W.2d 364, 369 (Minn.1980) (citing *State v. Niemi*, 284 Minn. 225, 229, 169 N.W.2d 758, 761 (1969)); see *In re James M.*, 65 Cal.App.3d 254, 264–65, 135 Cal.Rptr. 222, 228 (1976). Thus, the placement by the court of the child in another state has little bearing on the vitality of the child's connection with that court. The relationship continues despite geography. The UCCJA's "home state" theory of jurisdiction therefore bears little relevance in this context.

■ The jurisdictional concepts embodied in the UCCJA seek to assure informed decision making by restricting choice of forum to only those possessing optimum access to information about the child. As such, appellants argue that the State of Minnesota is better poised to entertain further court action. For the reasons considered below we cannot agree.

By virtue of the continuing involvement of the court of original jurisdiction in the matter at hand and the record of the initial dependency adjudication, the transcripts of the subsequent review hearings and reports of both the Hennepin County and San Diego County Departments of Public Welfare remain in California. Thus, were we to assert jurisdiction to the exclusion of California, we would be acting without benefit of a complete record. While we recognize that the child's long-term residency in Minnesota has likely generated information relevant to the child's ultimate disposition, such information is also available to the court in California through the mechanisms of the UCCJA. Under the Act, California may adduce the testimony of witnesses including parties and the child by deposition or otherwise in another state, order the appearance of parties outside the state, or request a court of record in another state to hold an evidentiary hearing on its behalf. UCCJA §§ 11, 18, 19 & Commissioners' Note. *See generally* Bodenheimer, *The Uniform Child Custody Jurisdiction Act*, 3 Fam.L.Q. 304, 314–15 (1969).

Further supporting California's assertion of jurisdiction is Minn.Stat. § 257.40 (1978), codifying the Interstate Compact on the Placement of Children.[6] As noted in a letter to the Hennepin County District Court from the Minnesota official charged with its administration, the California Department of Health placed Carl Mullins in Minnesota pursuant to the Compact, and as such retained jurisdiction over the child to effect his ultimate return to California. Therefore, the San Diego Superior Court "is empowered to determine all matters in relation to the custody of Carl Mullins including changing the custody of Carl Mullins from a

---

**6.** Article 5 of Minn.Stat. § 257.40 (1978) provides:

"(a) The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law. The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement. Nothing contained herein shall defeat a claim of jurisdiction by a receiving state sufficient to deal with an act of delinquency or crime committed therein."

"(b) When the sending agency is a public agency, it may enter into an agreement with an authorized public or private agency in the receiving state providing for the performance of one or more services in respect of such case by the latter as agent for the sending agency."

"(c) Nothing in this compact shall be construed to prevent a private charitable agency authorized to place children in the receiving state from performing services or acting as agent in that state for a private charitable agency of the sending state; nor to prevent the agency in the receiving state from discharging financial responsibility for the support and maintenance of a child who has been placed on behalf of the sending agency without relieving the responsibility set forth in paragraph (a) hereof."

Minnesota placement to a California placement."

Finally, even if we were inclined to assert jurisdiction by deeming our contacts more significant, lack of standing would render appellants' action nonjusticiable under our law.[7] Although foster parents in California have standing as "de facto parents" to contest a foster child's removal from a foster home, in Minnesota foster parents are denied standing to litigate the disposition of a foster child. *Compare Katzoff v. Superior Court*, 54 Cal. App.3d 1079, 127 Cal.Rptr. 178 (1976) *with In re the Welfare of E. G. and K. B.*, 268 N.W.2d 420 (Minn.1978).

Notwithstanding California's clear jurisdictional entitlement in the instant matter, the alternative tests advanced in the UCCJA suggest that two states with potentially competing interests could each individually satisfy the minimum requirements for assertions of jurisdiction. *See* UCCJA § 3, Commissioners' Note. Because, however, the Act only intends primary jurisdiction to lodge in one state, UCCJA § 14 provides that modifications of custody decrees of another state may only be rendered when the original state no longer has or declines to assume jurisdiction. *See* Minn.Stat. § 518A.14 (1978). But despite the apparent proscription against concurrent jurisdiction, the decisions of the Wisconsin Supreme Court in *Zillmer v. Zillmer*, 8 Wis.2d 657, 100 N.W.2d 564, *modified on rehearing*, 8 Wis.2d 663a, 101 N.W.2d 703 (1960) and the Colorado Supreme Court in *Fry v. Ball*, 544 P.2d 402 (Colo.1975), which embrace that principle, have been lauded as ingenious cooperative schemes in accord with the spirit of the Act. Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications*, 65 Cal.L. Rev. 978, 990–92 (1977); Note, *Temporary Custody Under the Uniform Child Custody Jurisdiction Act: Influence Without Modification*, 48 U.Colo.L.Rev. 603, 610, 612–15 (1977).

*Zillmer*, a pre–UCCJA decision, concerns a mother who attempted to execute a Kansas divorce decree awarding her custody of her children then living in Wisconsin with their grandparents. The grandparents, aware that the mother's mental health cast doubt upon her ability to care for the children, sued for a modification of decree in Wisconsin. The Wisconsin court, hearing convincing evidence that the mother was an incurable psychotic, determined nevertheless that although Wisconsin and Kansas shared concurrent jurisdiction, the connections of Kansas were superior; Wisconsin could not modify the decree. The court, however, found it "an appropriate exercise of the power of the Wisconsin court to permit the children to remain in the temporary custody of the grandparents pending [further proceedings in Kansas]." 8 Wis.2d at 663a–63b, 101 N.W.2d at 704. Following a rehearing in Kansas, the mother was denied custody.

In *Fry v. Ball*, a grandmother, faced with the prolonged detention of her son and his wife on drug charges, was appointed guardian of her 17-month-old grandchild by a court in California. Two years later, the grandparents moved to Colorado without obtaining leave of the California court. The child's parents, released from detention shortly thereafter, secured a termination of the guardianship. When the parents appeared in Colorado, the grandparents procured an ex parte order from a Colorado court restoring the status quo. Thereupon, the parents brought a petition in Colorado under the UCCJA to enjoin the enforcement of the ex parte order. The Colorado Supreme Court, observing that a strong argument could be made in support of an

---

**7.** An objection for want of standing goes to the existence of a cause of action. 59 Am.Jur.2d *Parties* § 254 (1971). Questions which relate to the existence of a justiciable controversy essential to the Supreme Court's exercise of jurisdiction may be raised at any time. *Izaak Walton League of America Endowment, Inc. v. State Dep't of Natural Resources*, 312 Minn. 587, 252 N.W.2d 852 (1977). That the issue of standing was not raised until the appeal to this court is therefore not material.

assertion of jurisdiction, acknowledged nevertheless that the spirit of the Act necessitated that California decide the matter. The court, however, querying whether all the relevant evidence had been examined, noted that neither the grandparents nor the child had testified at the hearing that resulted in the revocation of the guardianship. Invoking the preamble of the UCCJA calling for "cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child," UCCJA § 1, *see* Minn.Stat. § 518A.01 (1978), the court permitted the child to remain in the custody of his grandparents pending their timely filing of a petition for modification of decree with the California court. Such a disposition thus prevented the child from falling into the interstices of the federal system.

Like the Supreme Courts of Wisconsin and Colorado in *Zillmer* and *Fry*, we are concerned that the actions of the San Diego Superior Court in this case were predicated in the absence of a complete record. Appellants, uninformed that respondent was petitioning for the termination of dependency at the annual review hearing held in 1978, concluded not unreasonably that the proceedings would be pro forma and their attendance unwarranted. In fact, because the San Diego Department of Public Welfare supported the transfer of the child from Minnesota, the hearing resulted in the court order authorizing Carl's removal from appellants' home was in the nature of an ex parte proceeding. Neither the foster parents, the child, the Hennepin County social worker assigned to his case nor other Minnesota residents familiar with the situation were afforded the opportunity to make their views known.

Appellants volunteered in a moment of crisis to accept the custody of a five–year–old child when others would not or could not. The failure to furnish appellants with adequate notice that the child's status was subject to challenge cannot be ignored, nor can the unexplained conduct of the California authorities in seeking to remove the child from his school and return with him on the same day to San Diego without notifying the foster parents.

■ While we acknowledge that Minnesota is without primary jurisdiction to entertain appellants' petition for a finding of dependency or neglect under the UCCJA, we also recognize, as did the Colorado Supreme Court in *Fry v. Ball*, that the UCCJA calls for "cooperation between courts of different states which will lead to an informed decision on custody." 544 P.2d at 407. Because we presume that the San Diego Superior Court would not knowingly render a final decision in the absence of a complete record, under the ancillary jurisdiction afforded by the presence of the child and the foster parents in this state, we condition his return on the opportunity for a hearing in Minnesota. In so doing, we note that § 19 of the UCCJA would authorize the State of California to request a court of record in Minnesota to hold an evidentiary hearing germane to the question of the child's ultimate disposition. Therefore, contingent both upon appellants' formal application to the district court and notification of the California authorities, we reinstate the temporary injunction preventing the child's removal from Minnesota and return this case to the court below for an evidentiary hearing as directed herein to commence within 60 days of the filing of this opinion. Within 60 days after that hearing, we direct appellants to petition the San Diego Superior Court for a review of its prior order. Should appellants fail to act within the stated time frame, the district court may upon appropriate motion dissolve the injunction.

Affirmed and remanded with special instructions.

AMDAHL and SIMONETT, JJ., not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

SCOTT, Justice (dissenting).

I respectfully dissent. The majority acknowledges "California's clear jurisdictional

entitlement in this matter," but yet, it orders further proceedings in a Minnesota court, thereby undermining the purpose and intent of the Uniform Child Custody Jurisdiction Act (UCCJA), Minn.Stat. §§ 518A.01–.25 (1978 & Supp.1979).

As the majority concludes, under the UCCJA it is apparent that California has retained jurisdiction over the matter at hand. See Minn.Stat. § 518A.14 (1978). Consequently, pursuant to this legislation, any modification of the subject custody order should be pursued within the California judicial system. A contrary result is inconsistent with the UCCJA's stated purpose of avoiding "jurisdictional competition and conflict[s] with courts of other states in matters of child custody * * *." Minn. Stat. § 518.01(a) (1978).

The majority is well–intentioned in attempting to provide the California court with additional information. However, if the California court deems it desirable to hold an evidentiary hearing in Minnesota, which it may very well do, the UCCJA would allow the hearing on motion of the California tribunal, not at the insistence of this court. UCCJA §§ 18–19; see Minn. Stat. §§ 518.18–.19. Moreover, in the event the California court requests such a hearing in Minnesota, under the UCCJA the foreign tribunal "may prescribe the manner * * and the terms upon which the testimony shall be taken." UCCJA § 18; see Minn. Stat. § 518A.18. By not requiring the instant action to take its proper course in the California system, we would deny the California court the opportunity afforded under the UCCJA to structure the scope and focus of any evidentiary hearing conducted in Minnesota. This consideration could be significant, as the California tribunal may have specific concerns that it would like addressed at the hearing.

For the above reasons, I cannot join in the majority's remand of this case for the purpose of holding an evidentiary hearing. Instead, I would require appellants to petition the California court for the relief desired; an evidentiary hearing can then be held in Minnesota upon request of the California court. UCCJA §§ 18–19.