In re the Marriage of Cynthia SAWLE, f.k.a. Cynthia Sawle Nicholson, Petitioner, Respondent,

v.

Howard NICHOLSON, Appellant.

No. C0-86-1887.

Court of Appeals of Minnesota.

June 16, 1987.

Therese Wintering, Legal Assistance of Olmsted County, Rochester, for respondent.

Jack Longert (Pro Hac Vice), Legal Assistance to Institutionalized Persons Program, Madison, Wis., John Minge, Southern Minnesota Regional Legal Services, Winona, for appellant.

Considered and decided by CRIPPEN, P.J., and LESLIE and STONE *, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Subsequent to appellant Howard Nicholson's institutionalization for shooting respondent Cynthia Sawle's father and a friend of her father's, the parties' marriage was dissolved pursuant to a Wisconsin decree. Visitation was established for the parties' minor child. Respondent Sawle failed to comply with the provisions of visitation and eventually relocated from Arena, Wisconsin to Rochester, Minnesota. She then moved a Minnesota district court to accept jurisdiction and modify the existing visitation agreement. After this filing, but before hearing, appellant Nicholson filed a motion in Wisconsin circuit court requesting the court continue its jurisdiction in the matter and hold respondent Sawle in contempt for her failure to comply with the original visitation provisions. The Wisconsin hearing on appellant's motion took place prior to the Minnesota hearing on respondent's.

At the Wisconsin hearing the parties stipulated to holding the issue of contempt in abeyance until an October 31, 1986 hearing and agreed to new visitation terms. The contempt matter was ordered ad-

journed until the October hearing and the new provisions of visitation were implemented. Both parties reserved the right to seek further remedy with the court in the event of noncompliance. Although the Wisconsin court was aware of the Minnesota proceeding, regardless the Wisconsin court issued a further order in the matter.

The Minnesota hearing on the matter followed. The Minnesota district court accepted jurisdiction under the Uniform Child Custody Jurisdiction Act, Minn.Stat. §§ 518A.01–.25 (1984), reserved the modification of visitation issue and denied appellant's motion for costs and attorney fees. Appellant Nicholson appeals this order. We affirm.

## FACTS

Appellant Howard Nicholson and respondent Cynthia Sawle were married on January 5, 1980 in Belize City, and moved to Los Angeles, California in that same month. About a year later, on February 28, 1981, their son was born. By the following August Nicholson and Sawle separated due to marital problems. Sawle moved to Arena, Wisconsin with their son to live with her parents.

Nicholson visited Wisconsin twice between August and October of that year to see his son. During the second visit Nicholson had an altercation with Sawle's father which ended when Nicholson shot and wounded both Sawle's father and a friend of her father's. Nicholson was convicted of one count of attempted murder and found not guilty by reason of mental illness on a second count. Nicholson is currently institutionalized in the Mendota Mental Health Institute in Madison, Wisconsin.

The parties' marriage was dissolved by a Wisconsin decree on September 30, 1985. The issue of visitation was resolved by stipulation. The parties agreed to a schedule of visitation which included the following provisions:

A. [The parties' son] shall first visit with [Nicholson] in Wisconsin no later

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

than ten days after his last day of school in late May or early June, 1986.

B.  Within thirty days of September 30, 1985, [Sawle] will notify [Nicholson] of the exact day she shall arrive in Wisconsin with [the parties' son] for the first 1986 visit, and the date she will return home.

C.  [Nicholson] is responsible for the cost of [Sawle's] and [the parties' son's] transportation between Wisconsin and his home [and] for the cost of all future travel to Wisconsin specifically for the purpose of visitation.

D.  During [Sawle's] stay in Wisconsin in May or June, 1986, [the parties' son] shall visit with [Nicholson] once in the playroom at Dane County Family Court Counseling (FCC).  [Sawle] shall be present in the room at least at the beginning of the visit; she may leave the room at her own discretion.  The FCC staff will supervise according to their professional judgment.

E.  After the initial visit in May or June, 1986, [the parties' son] shall travel to Wisconsin for visitation a minimum of twice in each twelve-month period thereafter.

\*    \*    \*    \*    \*    \*

G.  [Sawle] shall arrange for a counselor for [the parties' son] to help assist him in dealing with the issue of visitation \* \* \* [t]he counselor selected shall be subject to approval of the Family Court Counselor, in this case, Sid Boersma.

Although the decree did not specifically provide for Sawle's move to Minnesota the language of the decree clearly contemplated her relocation out of state.  The parties indicated the original place of relocation for Sawle was to have been Colorado.  Sawle indicated that her inability to find work in Colorado led her to Minnesota.

In October of 1985 Sawle arrived in Rochester, Minnesota.  She did not notify the Wisconsin court of this move until the following January.  Additionally, with the exception of some sporadic telephone contacts, Sawle failed to comply with ordered visitation.  On June 26, 1986 Sawle moved a Minnesota district court to accept jurisdiction of the matter pursuant to the Uniform Child Custody Jurisdiction Act, as adopted in Minnesota, and for modification of visitation.  Specifically, Sawle requested an order providing that Kathy Berger of the Olmsted County Department of Social Services supervise visitation between Nicholson and the parties' son and allowing Sawle to choose her own representative to accompany their son on any future visits with Nicholson.  These requests amounted to a modification of terms of visitation [D] and [G].  Before a hearing took place on Sawle's motion, Nicholson moved the Wisconsin court to exercise its continuing jurisdiction and hold Sawle in contempt for her failure to comply with visitation.  The Wisconsin hearing took place prior to the Minnesota hearing.

The hearing on Nicholson's motion was held on July 30, 1986 before the Wisconsin court.  At the hearing the trial court was made aware of the Minnesota proceeding on the matter.  Sawle's counsel indicated to the court Sawle's intention to seek jurisdiction in Minnesota and that those efforts not be prejudiced by her appearance in Wisconsin.  The Wisconsin court noted the reservation and provided for a transcript for the Minnesota court.

Pursuant to the parties' stipulation the Wisconsin court ordered the contempt matter adjourned until October 31, 1986.  After the parties stipulated to the new terms of visitation, the court specifically ordered telephone visitation supervised by Sid Boersma and a face-to-face visitation to occur between August and October.  The stipulation and order did not deal with the requests Sawle had made to the Minnesota court.  Both parties were allowed the right to petition for further relief in the event of noncompliance.

The Minnesota hearing took place subsequent to this order.  The trial court granted jurisdiction under the Uniform Child Custody Jurisdiction Act as adopted in Minnesota.  The trial court reserved the issue of modification of visitation pending a response by Nicholson.  Consequently, the court did not rule on Sawle's motion requesting that visitation for the parties' mi-

nor child be supervised by Kathy Berger of the Olmsted County Department of Social Services. The court also declined to rule on Sawle's motion requesting that Sawle be allowed to choose her own representative to accompany the minor child on any future visits with Nicholson. Finally, the trial court denied Nicholson's motion for costs and attorney fees.

## ISSUE

Did the trial court properly assume jurisdiction?

## ANALYSIS

■ The Uniform Child Custody Jurisdiction Act was adopted to minimize the hardships on children by reducing the opportunities for interjurisdictional controversies over child custody. *Beier v. Beier,* 371 N.W.2d 52, 55 (Minn.Ct.App.1985) (citing *In re Welfare of Mullins,* 298 N.W.2d 56, 59 (Minn.1980)). The Act is designed to protect the best interest of the child, avoid relitigation of custody issues, and foster cooperation between the courts of different jurisdictions. Minn.Stat. § 518A.01, subd. 1 (1986). Both Minnesota and Wisconsin have adopted virtually identical versions of the UCCJA. *See* Minn.Stat. ch. 518A (1986); Wis.Stat. ch. 822 (1985).

Minn.Stat. § 518A.14, subd. 1 (1986) governs modification of a child custody award made by another state's court:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 518A.01 to 518A.25 or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

## I. *Wisconsin Jurisdiction*

The first question presented is whether it appears that the Wisconsin court "does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 518A.01 to 518A.25." *Id.*

The "jurisdictional prerequisites" referred to are articulated in Minn.Stat. § 518A.03, subd. 1 (1986) and Wis.Stat. § 822.03 (1985). *See Bergh v. Bergh,* 387 N.W.2d 213, 215 (Minn.Ct.App.1986). Minn.Stat. § 518A.03, subd. 1 (1986) provides four grounds for acceptance of jurisdiction:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) this state (1) is the home state of the child at the time of the commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and the parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d)(1) it appears that no court in another state would have jurisdiction under prerequisites substantially in accordance with clauses (sic) (a), (b), or (c), or a court of another state has declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that a court of this state assume jurisdiction.

The Wisconsin version of this statute contains a virtually identical provision.

■ Under the Wisconsin version of the UCCJA the Wisconsin court does not have

jurisdiction in this matter. First, under clause (a) Wisconsin was not the "home state" of the parties' minor child at the time of the commencement of the proceeding, nor was Wisconsin the child's "home state" within six months of commencement of the proceeding. " 'Home state' means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months." Minn.Stat. § 518A.02(e) (1986). The proceeding was commenced on June 26, 1986 when Sawle moved the Minnesota court to assume jurisdiction and modify visitation. *See Bergh*, 387 N.W.2d at 215. (The court focused on motion to modify, as opposed to the commencement of the dissolution, as the commencement of proceedings for purposes of the statute.); *but see In re Welfare of Mullins*, 298 N.W.2d 56, 59 (Minn.1980). (In the case of a custody decree arising from a dependency adjudication, UCCJA's "home state" theory jurisdiction "bears little relevance," as the relationship between the court and child is continuing and does not attenuate over time, consequently, the child's "home state" should be determined from the commencement of the original dissolution proceeding.) Sawle and her son had resided in Minnesota since October of 1985, well beyond the six month requirement. Therefore, the Wisconsin court could not obtain "home state" jurisdiction under the statute.

Under clause (b) the Wisconsin court could assume jurisdiction in the best interest of the parties' son if he and his father Nicholson had a "significant connection" with Wisconsin and if there was "substantial evidence" concerning the son's care, protection, training and personal relationships in Wisconsin. The parties' son and Nicholson are connected to Wisconsin in that his father is now institutionalized there and he lived there for a relatively brief period in the past. Yet, the parties' son never attended school in Wisconsin. His contact with the Dane County Social Services was limited. His father's presence in Wisconsin may make the connection there "significant." *See Beier*, 371 N.W.2d at 55. Yet, there is not "substantial evi-

dence" concerning his care, protection, training and personal relationships present in the state. Consequently, the Wisconsin court could not assume jurisdiction under clause (b).

The Wisconsin court could not assume jurisdiction under clause (c) either. Facts establishing the required abandonment or emergency situation are not present. Under clause (d) Wisconsin could assume jurisdiction if neither the Minnesota court, nor any other, appeared to have jurisdiction. Thus, the second question presented is whether the Minnesota court can assume jurisdiction under clause (a), (b), or (c).

## II. *Minnesota Jurisdiction*

The Minnesota trial court found a basis to assume jurisdiction in both clauses (a) and (b), thus leaving the Wisconsin court without a basis for jurisdiction under any of the required provisions. We agree. The Minnesota court could obtain "home state" jurisdiction pursuant to clause (a) in as much as the parties' son has resided in Minnesota with his mother for in excess of six months from the commencement of this proceeding. Jurisdiction is also established under clause (b). The parties' son's residence in his present community, the fact that he is about to attend school in Minnesota, and his contact with a Minnesota psychiatrist establishes a "significant connection" to Minnesota and "substantial evidence" concerning his care, protection, training and personal relationships. Consequently, the trial court was correct in assuming jurisdiction under the UCCJA in as much as Wisconsin no longer had jurisdiction of the matter and the requirements for assumption of jurisdiction had been met.

Nicholson argues the Minnesota court could not assume jurisdiction in the absence of a formal refusal of jurisdiction by the Wisconsin court. Nicholson argues that not only has this refusal not been made, but that Wisconsin has in fact exercised jurisdiction by issuing a further order concerning the child's custody. Minn.Stat. § 518A.14, subd. 1 provides that the court shall not modify the decree of another state "unless (1) it appears * * * that the court

which rendered the decree does not now have jurisdiction * * * *or* has declined to assume jurisdiction to modify the decree." (emphasis added). Nicholson would be correct if the Minnesota court was predicating its jurisdiction on the latter portion of subdivision one, but this was not the case. The Minnesota court's jurisdiction is in fact based on the finding that the Wisconsin court does not now have jurisdiction under the jurisdictional prerequisites provided in the statute.

Nicholson claims the Minnesota court should have declined to exercise jurisdiction because of Sawle's wrongful act in moving to Minnesota without court permission. Minn.Stat. § 518A.08, subd. 2 provides that "[i]f the petitioner has violated any other provision of a custody decree of another state the court *may* decline to exercise its jurisdiction if this is just and proper under the circumstances." (emphasis added). This provision is discretionary on the part of the trial court. The facts and circumstances of Sawle's move to Minnesota do not provide a basis for a finding of an abuse of that discretion. The trial court's findings on Nicholson's claim that the Minnesota forum is inconvenient pursuant to Minn.Stat. § 518A.07 are similarly within the trial court's proper discretion.

■ Minn.Stat. § 518A.06 provides that when a Minnesota court is informed of a proceeding on the child's custody is pending in another court, the Minnesota court shall communicate with the other court concerning the proper forum for the litigation. Nicholson claims it was error for the trial court to fail to so communicate. While the preferred course is for such communication to take place, failure to do so does not in and of itself deprive the Minnesota court of jurisdiction under the UCCJA. *See Snow v. Snow,* 369 N.W.2d 581, 584 (Minn.Ct.App.1985).

### III. *Mootness/Ripeness*

While the trial court properly assumed jurisdiction under the UCCJA, a troubling question raised by appellant Nicholson is what exactly the trial court has assumed

jurisdiction to decide. Nicholson argues that the jurisdictional issues decided by the trial court are not ripe for review because a live issue of controversy does not yet exist between the parties. Specifically, Nicholson claims that all issues between the parties concerning visitation were resolved by stipulation at the July 30, 1986 Wisconsin hearing and that the resulting order establishing new terms of visitation makes the issue itself moot. Additionally, Nicholson argues there is no present issue between the parties and that any future issues concerning visitation are not appropriate for judicial review at this time. On appeal Nicholson claims to concede all Sawle's requests that are pending before the Minnesota court concerning visitation.

Certainly, there must be a substantial and real controversy between the parties before a case will be considered by this court on appeal. *AAA Elec. & Neon Service v. R–Design Co.,* 364 N.W.2d 869 (Minn.Ct.App.1985). "No controversy is presented, absent a genuine conflict in the tangible interests of opposing litigants." *Izaak Walton League of America Endowment, Inc. v. State, Department of Natural Resources,* 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977).

■ The trial court found Nicholson's contention that the matter was not ripe for review "completely without merit." The court stated, "The Petitioner moved this Court to assume jurisdiction in the matter and that alone is an actual controversy between the parties or, at the very least, is 'the ripening seeds of one.'" The trial court applied the rule too broadly. The question of jurisdiction *alone* does not meet the requirement of an actual controversy between the parties. There must be an underlying controversy to the jurisdictional issue. We find one exists here.

Sawle originally moved the Minnesota trial court to assume jurisdiction and modify visitation. Specifically, Sawle requested that visitation of the parties' child be supervised by Kathy Berger of the Olmsted County Department of Social Services. This supervision was to be in lieu of the supervision of Family Court Counselor Sid

Boersma of Dane County, Wisconsin as provided for in the original decree. Sawle also requested that she be allowed to choose her own representative to accompany her son on any future visits with Nicholson, as opposed to the original decree's requirement that she personally accompany him on such visits. The Minnesota trial court reserved these two issues until after the jurisdictional question was resolved and Nicholson had an opportunity to respond. Two questions exist as to whether these two issues are moot: First, does the parties' stipulation before the Wisconsin court establishing new terms of visitation make the pending motion moot? Second, does Nicholson's claimed concession on appeal to Sawle's requests also make the pending motion moot?

First, as the Minnesota court properly took jurisdiction of the matter, the parties' stipulation before the Wisconsin trial court does not make the issue of visitation moot. Initially, a necessary assumption is that the Wisconsin court did not have jurisdiction in the matter. The stipulation itself was in response to a motion to hold Sawle in contempt of the Wisconsin court for violation of the original visitation terms. The new terms were to be evaluated within thirty days when the hearing on the contempt matter was to be held. Consequently, the stipulation was of limited duration and had limited effect, leaving the issue of visitation unresolved.

■ Second, Nicholson's claimed concession to Sawle's requests before the trial court also has not mooted the visitation issue. In Nicholson's reply brief he states:

Appellant is satisfied with the visitation agreement arranged at the time of the divorce as it was amended in the July 30, 1986 Wisconsin stipulation. Appellee's proposed amendments to implementing visitation have been incorporated into the parties dealings, and Appellant would readily accept an amendment to the Wisconsin decrees in Wisconsin to specifically provide for this. Appellant anticipates no need for any court intervention at this time.

Nicholson's possible concession in his reply brief is not binding upon him establishing an agreement between the parties on visitation. Should the parties wish to stipulate as to visitation they may do so before the trial court. It would be premature for this court to find that an agreement has taken place mooting the visitation issue on appeal based only on this language.

The trial court was thus correct in finding that the "ripening seeds" of a controversy are present. The parties are apparently in conflict over visitation. Their respective interests appear to be at odds. It would be premature for this court to dismiss the matter as moot. The trial court should be allowed to deal with the issue of visitation and Sawle's motion. Nicholson would have an opportunity to respond to those issues reserved by the trial court. At that time the trial court could then make a proper determination on mootness.

## DECISION

The trial court properly assumed jurisdiction under the uniform Child Custody Jurisdiction Act, Minn.Stat. §§ 518A.01–.25 (1984).

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

I respectfully dissent. In the circumstances here, the Minnesota trial court should defer to the continuing jurisdiction of the Wisconsin court.

It is undisputed that the 1985 Wisconsin decree cannot be modified in Minnesota unless it appears that the Wisconsin court "does not now have jurisdiction." Minn. Stat. § 518A.14, subd. 1 (1986). In my opinion, Wisconsin has continued "home state" jurisdiction under Wisconsin Statutes § 822.03 (1983–84), which parallels the jurisdictional standards found in Minnesota Statutes § 518A.13 (1986).

Wisconsin retains continuing jurisdiction if it remains the home state of the child "at the time of the commencement of the proceedings." Minn.Stat. § 518A.03, subd. 1(a); see Bergh v. Bergh, 387 N.W.2d 213, 215 (Minn.Ct.App.1986). Citing Bergh, my

colleagues on this panel conclude that the "proceeding" to be examined here is the Minnesota modification motion commenced on June 26, 1986. I disagree. Based on the degree of continued court involvement contemplated in the original dissolution judgment, there is compelling reason to examine Wisconsin jurisdiction in terms of the home state of the child at the time the dissolution proceedings were commenced.

In *Bergh*, we held that North Dakota, although the site of a 1985 dissolution decree, was not the home state of a child when modifications were commenced in Minnesota six weeks later. *See id.* at 215–216. That decision governs dissolution decrees which contain unconditional placements of custody. The Minnesota Supreme Court endorsed this approach for "a typical divorce decree setting forth terms of child custody," where the "nexus" of the parties with that court "attenuates" when the parties to the decree move out of state. *In re Welfare of Mullins*, 298 N.W.2d 56, 59 (Minn.1980).

The Wisconsin decree here was not a typical dissolution decree. First, the Wisconsin court made detailed provision for future steps needed to provide for visitation of the child with his father. In addition, the court specifically charged a Wisconsin agency, Dane County Family Court Counseling, with supervision of future visits. The court charged staff of that agency with the responsibility to approve or disapprove of a counselor for the child who was to be identified by the child's mother. The court named a staff person of Dane County Family Court Counseling to act on its behalf in screening the mother's suggestion for a counselor. In my opinion, these provisions are a straightforward form of exercise of continuing jurisdiction, so that Wisconsin's role in the case is to be examined with reference to the time the dissolution proceedings were commenced.

The concept of continuing jurisdiction has already received attention in Minnesota. In *Mullins*, the supreme court recognized that a relationship of a court and a child "does not attenuate overtime but continues" where the court periodically remains involved in the proceedings. *Id.* at 59. In these circumstances:

The relationship [of the child and the court] continues despite geography. The UCCJA's 'home state' theory of jurisdiction therefore bears little relevance in this context.

*Id.* at 60. *Mullins* dealt with a California dependency proceeding which it found in sharp contrast with "a typical divorce decree setting forth terms of child custody," because the latter "does not contemplate active supervision by the issuing court." *Id.* at 59.

We are not dealing with the same kind of "active supervision" as is typically involved in a juvenile court dependency or neglect proceeding. On the other hand, we are not dealing here with a typical divorce decree which includes an unconditional determination on custody and visitation. In my judgment, the degree of continued court involvement provided in Wisconsin's 1985 dissolution judgment involves the kind of continuing jurisdiction which requires that we put aside the notion of a change of the child's home state based solely on changes in residence.

In addition, recognition of Wisconsin's superior jurisdiction in this case coincides with the purposes of the Uniform Child Custody Jurisdiction Act. Among the general purposes of the act is:

To avoid relitigation of custody decisions of other states in this state insofar as feasible, and to facilitate the enforcement of custody decrees of other states.

Minn.Stat. § 518A.01, subd. 1(c). Here respondent proposes to involve the Minnesota court in precisely those judicial decisions which were made in Wisconsin in 1985 and reviewed in the Wisconsin court in 1986. Wisconsin had before it in 1986 a duly instituted enforcement proceeding regarding the terms of its earlier decree. In sum, involvement of a Minnesota court in the matter is unnecessary, meddlesome, and in conflict with the spirit of the language of UCCJA. I would reverse the Minnesota trial court's decision to accept jurisdiction.