**Renae DENNIS, Plaintiff and Appellee,**

v.

**Earl DENNIS, Defendant and Appellant.**

**Civ. No. 10836.**

Supreme Court of North Dakota.

April 17, 1985.

*Budd, supra.*

 

Pulkrabek & Tuntland, Mandan, for plaintiff and appellee; argued by Benjamin C. Pulkrabek.

Judith A. Atkinson, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

Earl Dennis has filed an appeal from an order of the District Court of Burleigh County, dated September 13, 1984, dismissing Earl's request to modify an original custody decree for lack of subject matter jurisdiction. We reverse and remand for a redetermination of the jurisdictional issue.

During September 1981, the district court entered a decree dissolving Earl and Renae Dennis' marriage. As part of that decree, Renae was awarded custody of the parties' minor children, and Earl was granted reasonable visitation rights. At the time the original decree was entered, the parties were aware that Renae intended to move with the children to Iowa, and the decree contained alternative visitation provisions which were to become effective when Renae moved from North Dakota. During October 1981, Renae moved to Iowa with the children, and they have resided there since that time.

During July 1984, Earl filed a request with the district court to modify the visitation provisions of the original decree. The district court denied Earl's request for modification on the ground that the State of Iowa, and not the State of North Dakota, had jurisdiction to decide the case on its merits.

The sole issue raised by Earl on appeal is whether or not the district court was required to exercise jurisdiction in this case under the provisions of the Federal Parental Kidnapping Prevention Act of 1980 (PKPA). Earl asserts that the PKPA required the district court to assume jurisdiction because Earl is a "contestant", as defined by the act, who currently resides in North Dakota.

It is well-settled that the PKPA must be considered by a court in resolving a jurisdictional issue involving an interstate

custody dispute. *See, e.g., Mebert v. Mebert,* 111 Misc.2d 500, 444 N.Y.S.2d 834 (1981). When the PKPA was enacted by Congress in 1980, most states had adopted the Uniform Child Custody Jurisdiction Act (UCCJA). One well-written article on the subject, Agopian & Anderson, *Legislative Reforms To Reduce Parental Child Abductions,* The Journal of Juvenile Law, Vol. 6, p. 17 (1982), describes the circumstances prompting the enactment of the PKPA by Congress:

> "At the present time only 47 states have adopted the UCCJA. The non-UCCJA states, however, remained attractive havens for abducting parents seeking a favorable custody hearing, and consequently 'forum shopping' remained common and often rewarding. To reduce the re-litigation of child custody decrees in new jurisdictions, the PKPA requires all states, both UCCJA and non-UCCJA, to honor sister state custody decrees which conform with federal jurisdictional criteria." [Footnotes omitted.]

The provision of the PKPA which is relevant to the district court's determination of its jurisdictional authority in this case is 28 U.S.C. § 1738A(d):

> "(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such

State remains the residence of the child or of any contestant."

In support of his position that North Dakota continues to have jurisdiction in this case, Earl asserts that under the PKPA the state entering the original decree continues to have jurisdiction to modify the decree so long as at least one contestant remains a resident ·of that state. We disagree. We believe the foregoing provision of the PKPA sets forth two prerequisites for concluding that a state has jurisdiction to modify its original decree.

First, the state in which the original decree was entered must remain the residence of a child or one of the contestants. It is undisputed that Earl is a contestant in this case and that he is a resident of North Dakota. That prerequisite has been met.

Second, the requirement of Subsection (c)(1) of the PKPA must continue to be met:

> "(c) . . .
>
> "(1) such court has jurisdiction under the law of such State; . . ."

Thus, North Dakota, to assume jurisdiction to modify the original decree, must currently meet the jurisdictional requirements found within our codification of the UCCJA under Section 14–14–03(1), N.D.C.C.[1]

Having reviewed the jurisdictional requirements under that provision, we conclude that the district court did not err in refusing to exercise jurisdiction under subsection (1)(a) of Section 14–14–03, N.D.C.C.,

---

1. "*14–14–03. Jurisdiction.*
   "1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:
   a. This state (1) is the home state of the child at the time of commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
   b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evi-

dence concerning the child's present or future care, protection, training, and personal relationships;
   c. The child is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because·he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected, dependent, or deprived; or
   d. (1) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision a, b, or c, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that this court assume jurisdiction."

because Iowa, and not North Dakota, is currently the children's home state where they have resided with their custodial parent for more than three years. That conclusion is supported by a number of courts which have recognized that subsequent to entry of an original custody decree by a child's home state, another state can become the home state and obtain jurisdiction to modify the original decree. See, *Boyd v. Boyd*, 653 S.W.2d 732 (Tenn.Ct.App.1983); *Serna v. Salazar*, 98 N.M. 648, 651 P.2d 1292 (1982); *Mebert v. Mebert*, 111 Misc.2d 500, 444 N.Y.S.2d 834 (1981); *Kumar v. Santa Clara County Superior Court*, 124 Cal.App.3d 1003, 177 Cal.Rptr. 763 (1981).

■ Under subsection (1)(b) of Section 14–14–03, N.D.C.C., a state can assume jurisdiction to modify its original custody decree if the child and his parent or one contestant have a "significant connection" with the state and there is available in the state substantial evidence concerning the child which warrants "in the best interests of the child" that a court of the state assume jurisdiction. Unfortunately, it is impossible to determine from the district court's order in this case to what extent, if at all, the court considered whether or not it had "significant connection" jurisdiction under subsection (1)(b) of Section 14–14–03, N.D.C.C. That is a question which should be determined by the district court in the first instance after proper hearing.

In accordance with this opinion, we hereby reverse the order of dismissal and remand for a redetermination of the jurisdictional issue.

GIERKE, J., concurs.

VANDE WALLE, Justice, concurring specially.

I concur in the conclusion of the majority opinion reversing the judgment of the trial court and remanding the matter in order that the trial court might consider the issue of "significant connection."

The majority opinion appears to indicate that the PKPA and UCCJA require that after the children have resided in another State for six months North Dakota courts lose jurisdiction to modify the custody or visitation provisions of the decree. If that is the law, noncustodial parents should be warned that if the divorce decree permits the custodial parent to remove the children from the State or if removal is permitted under Section 14–09–07, N.D.C.C., which requires approval of the trial court in order that the custodial parent may change the residence of the child from this State to another State, the trial court of this State will lose jurisdiction over the matter six months from the time the children are removed from the State and that the courts in the State of residence of the children will henceforth determine what visitation rights the noncustodial parents may exercise. Furthermore, the only issue that the trial court must consider in determining whether or not to permit the custodial parent to change the residence of a child from this State to another State is the best interests of the children. The custodial parent is required to show no exceptional circumstances in order to obtain the approval of the trial court. *Burich v. Burich*, 314 N.W.2d 82 (N.D.1981).

I am concerned that the PKPA and the UCCJA reduce the issue of jurisdiction to a mathematical formula, i.e., six months' residence in another State equals a loss of jurisdiction for all purposes. The trial court which, as here, granted the divorce decree and provided that Renae have custody of the children and that Earl have visitation rights should, in my estimation, retain jurisdiction to modify the provisions for visitation, as opposed to custody, when Earl continues to reside in North Dakota and the visitation will take place in North Dakota. Visitation privileges are created to promote the best interests of the child. *Burich, supra.* It therefore appears to me that the courts of the State in which the divorce decree was granted, in which the noncustodial parent continues to reside and in which the children will be visiting, are in the best position to determine whether or

not that visitation is in the best interests of the children and whether or not it should be modified.

GIERKE, J., concurs.

MESCHKE, Justice, special concurrence.

I concur in reversing the judgment of the trial court refusing to consider this motion to modify visitation provisions [1] of the original divorce custody decree upon the grounds that it "has no jurisdiction to handle the matter" because North Dakota is no longer the "home state" of the children.

1. A "custody determination" under the Uniform Child Custody Jurisdiction Act includes "visitation rights;" N.D.C.C. § 14-14-02(2).

2. The trial court, having had in personam jurisdiction over both custody contestants, has continuing jurisdiction. N.D.C.C. § 14-05-22 ("... and may vacate or modify the same at any time.") has been held to be "a continuing jurisdiction". *Voskuil v. Voskuil,* 256 N.W.2d 526, 529 (N.D.1977).

3. See Chapter 14-14, N.D.C.C. Subsection 1 of N.D.C.C. § 14-14-03 provides, in pertinent part:
"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:
a. This state (1) is the home state of the child at the time of the commencement of the proceeding, *or* (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, *and a parent ... continues to live in this state;"* (emphasis supplied.)
These alternative jurisdictional tests could be characterized as a "new jurisdiction" test and a "continuing jurisdiction" test. Under the latter alternative test, North Dakota had been the home state of these children before commencement of the divorce proceeding in which this custody decree was issued; these children are absent from North Dakota because of their removal by their mother; and the father *continues* to live in North Dakota.

4. 28 U.S.C. § 1738A. Subsection (c) thereof provides in pertinent part:
"A child custody determination made by a court of a State is consistent with the provisions of this section only if—
(1) such court has jurisdiction under the law of such State; and
(2) *one* of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the

proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant *continues* to live in such State;" (emphasis supplied).
Again, under the "continuing jurisdiction" alternative test, North Dakota had been the home state of these children before the date of the commencement of the divorce proceeding in which the custody determination was made; the children are absent from North Dakota because of their removal from North Dakota by a contestant, the mother; and a contestant, the father, *continues* to live in North Dakota.

5. This design under the U.C.C.J.A. is illustrated by the complementary nature of sections 12 and 13.
Section 14-14-12 N.D.C.C. provides:
*"Binding force and res judicata effect of custody decree.* A custody decree rendered by a court of this state which had jurisdiction under section 14-14-03 binds all parties who have been served in this state or notified in accordance with section 14-14-05 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until determination is modified pursuant to law, including the provisions of this chapter."
Section 14-14-13 N.D.C.C. provides:
*"Recognition of out-of-state custody decrees.* The courts of this state shall recognize and enforce an initial decree or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with

---

There is continuing jurisdiction under a custody decree [2] so long as one of the contesting parents *continues* to live in the issuing state. This is true under both our Uniform Child Custody Jurisdiction Act [3] (U.C.C.J.A.) and closely parallel provisions of the section on "full faith and credit given to child custody determinations" in the Parental Kidnapping Protection Act (P.K.P.A.).[4] A careful reading of the entire text of both enactments discloses parallel designs to accord priority to the custody decree in the first state in which a custody proceeding is properly initiated, through res judicata and full faith and credit.[5]

That jurisdictional priority "continues" so long as the first state retains continuing jurisdiction under its own laws and at least one of the contesting parents (or parties)

    jurisdictional standards substantially similar to those of this chapter."

This design under the P.K.P.A. is illustrated by the complementary nature of the following subsections:

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

\*   \*   \*   \*   \*   \*

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

    "(1) it has jurisdiction to make such a child custody determination; and

    "(2) *the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.*" (emphasis supplied).

**6.** See N.D.C.C. § 14–14–14(1), (section 14 of the Uniform Act), enjoining other courts from modifying a North Dakota custody decree unless North Dakota "does not now have jurisdiction" or "has declined to assume jurisdiction to modify the decree":

"*Modification of custody decree of another state.* 1. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction."

See also, § 14–14–06, subsection 1:

"A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons."

Subsection (d) of the "full faith and credit" section of P.K.P.A. expressly recognizes "continuing jurisdiction" during the continuous residence "of any contestant":

"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and *such State remains the residence* of the child or *of any contestant.*" (emphasis supplied).

continues to reside in that state.[6] This reading of the continuing jurisdiction of the state of the initial custody decree is reinforced by clear expressions in the Commissioners' Notes to the U.C.C.J.A.,[7] by the

*dence* of the child or *of any contestant.*" (emphasis supplied).

**7.** The Commissioner's note to § 14 makes it clear that an initial jurisdiction once obtained continues, until clearly lost by the absence of the children and both parents, or unless the court of the initial state declines jurisdiction:

"Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. (Citations omitted) In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, *all* petitions for modification are to be addressed to the prior state if the state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, *all* the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. (Citation omitted)

For example, if custody was awarded to the father in state 1, where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6½ months, (3½ months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the 'home state' of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law. (Citation omitted) Also, if the father in the same case continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease.

\*   \*   \*   \*   \*   \*

*If the state of the prior decree declines to assume jurisdiction to modify the decree, another state with jurisdiction under section 3 can proceed with the case. That is not so if the prior court dismissed the petition on its merits.*" Commissioners' Note to § 14 of the

stated purposes of the P.K.P.A.,[8] and by the observations of legal scholars.[9]

Observing that North Dakota has now lost "home state" jurisdiction because these children have resided in Iowa for more than six months, the opinion of the Chief Justice reads the term "custody proceeding" disjunctively, as did the trial court, and thus concludes that jurisdiction must be determined anew. In my view, this is not an appropriate reading of either the U.C.C.J.A. or the "full faith and credit" provision of the P.K.P.A., even though in some cases, like this one, it may lead to the same jurisdictional result under the alternative U.C.C.J.A. jurisdictional test of "significant connections." If the children and both parents had absented themselves from this state since the original decree, this would be a necessary analysis, where no other state has subsequently assumed jurisdiction, because the continuing jurisdiction connections recognized by both uniform and federal acts have been broken. For an example of determining jurisdiction anew, see the recent decision, of the Alabama Supreme Court, *Blanton v. Blanton*, 463 So.2d 162 (1985).

However, to apply this "new proceeding" jurisdictional analysis in a case like this is inconsistent with the underlying objectives of both the U.C.C.J.A. and P.K.P.A. to reduce forum shopping and to strengthen full faith and credit for custody decrees. Both acts accomplish these objectives by plainly according a continuing jurisdictional priority, through res judicata and full faith and credit, to the custody decree of the first state in which a custody proceeding is properly initiated, so long as it has connections with either the children or one of the parties.[10] Both res judicata and full faith and

---

U.C.C.J.A., 9 U.L.A. 154–155 (emphasis added).

8. Section 7(c) of P.K.P.A., Public Law 96–611, 94 Stat. 3568, (the "full faith and credit given to child custody determinations" section, found at 28 U.S.C. § 1738A, is section 8 of Public Law 96–611), states that its general purposes include:
   "(3) facilitate the enforcement of custody and visitation decrees of sister States;
   "(4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
   "(5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being;"

9. Ruby, "Modification of an Out of State Child Custody Decree Under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act", 16 U.Rich.L.Rev. 773. This article observes, at 785, that "... the concept of P.K.P.A.'s *exclusive* and *continuing* jurisdiction in the 'home state' is fully satisfied so long as the state of the prior custody decree remains the residence of either the child *or* of any contestant." (emphasis in original).
   Sherman, "Child Custody Jurisdiction and The Parental Kidnapping Prevention Act—A Due Process Dilemma?", 17 Tulsa L.J. 713, 714 n. 3:
   "Furthermore, continuing jurisdiction remains exclusive if the child or any parent remains in the state of the previous decree. *Id.* §§ 8(a)(c)(2)(E), (a)(d), 94 Stat. at 3570–

71. These PKPA provisions reflect the provisions of UCCJA §§ 3, 14, 9 U.L.A. 122–23, 153–54 (1979), with two important exceptions. The PKPA establishes with more specificity those situations to which continuing jurisdiction is applicable or should be deferred. In comparison, the corresponding UCCJA provision is more vague. It allows for the exercise of continuing jurisdiction and deference to this jurisdiction if the state would still have jurisdiction 'substantially in accordance with' the UCCJA. *Id.* § 14, 9 U.L.A. at 153–54. Also, the PKPA establishes definite priorities in its jurisdictional scheme. For example, 'significant connection-substantial evidence' jurisdiction, PKPA, Pub.L. No. 96–611, § 8(a)(c)(2)(B), 94 Stat. 3566, 3570 (1980), can only be invoked if there is no home state. In contrast, the UCCJA would permit the exercise of jurisdiction concurrently by the home state, UCCJA § 3(a)(1), 9 U.L.A. 122 (1979), and a state asserting the existence of a significant connection to and substantial evidence regarding the controversy. *Id.* § 3(a)(2), 9 U.L.A. at 122. To the extent that the federal law would preempt a state version of the UCCJA, this concurrent jurisdiction problem should no longer arise."

10. In *Matter of Welfare of Mullins*, 298 N.W.2d 56 (Minn.1980), Justice Sheran, writing for the majority, held that Minnesota was without primary jurisdiction to entertain a petition for change of custody of a child who had lived with foster parents in Minnesota for over three years, where the child had been placed in Minnesota by, and was under continuing supervision of, California courts saying:

credit must normally extend more than six months, even when the best interests of children are involved.[11]

In this case, there is no doubt that the initial custody decree was properly issued since North Dakota was then the "home state" of the children. And, there is no doubt that the courts of North Dakota have continuing jurisdiction over their own custody decrees,[12] where they had in personam jurisdiction of both contesting parties. The father, one of the contesting parents, has continued to reside in this state and has also continuously exercised his visitation rights under the original custody decree of this state by bringing his children back to North Dakota for visitation.[13] Thus, here there can be little, if any, doubt about "continuing jurisdiction" under both the U.C.C.J.A. and the "full faith and credit" provision of the P.K.P.A.

There is no custody proceeding pending in Iowa.[14] Furthermore, it is plain that Iowa courts could not on this record appropriately undertake to modify the provisions of this original custody decree of the North Dakota state court, unless and until the issuing North Dakota court declined to exercise its continuing jurisdiction upon discretionary inconvenient forum grounds.[15]

"Notwithstanding California's clear jurisdictional entitlement in the instant matter, the alternative tests advanced in the UCCJA suggest that two states with potentially competing interests could each individually satisfy the minimum requirements for assertions of jurisdiction. *See* UCCJA § 3, Commissioners' Note. Because, however, the Act only intends primary jurisdiction to lodge in one state, UCCJA § 14 provides that modifications of custody decrees of another state may only be rendered when the original state no longer has or declines to assume jurisdiction." 298 N.W.2d at 61.

**11.** In *Olson v. Olson,* 361 N.W.2d 249, 252, (N.D. 1985), this court held:
"In our state, there is a legally recognizable right of visitation between a child and the noncustodial parent which is considered to be in the best interest of the child. *See* Subsection 14–05–22(2) N.D.C.C.; *Gardebring v. Rizzo,* 269 N.W.2d 104 (N.D.1978)."
Usually, stability and continuity are important considerations in assessing the best interests of children for custody and visitation determinations.

**12.** See footnote 2.

**13.** His motion affidavit shows that each summer, he has either provided transportation for or gone to Iowa to pick up his two small children (they were 4½ months and two years old at the time of the decree in 1981) to bring them back to North Dakota for the ten day visitation period in 1982 and in 1983 and the 20 day visitation period in 1984. His motion sought to expand his visitation rights with these small children to the three summer months and additionally to obtain visitation during part of other times that they are in the State when the mother returns to visit her relatives in Stanley, North Dakota. The father paid the expenses for the mother to fly back with the children in 1982 and paid her travel expenses to drive the children to North Dakota in 1983. In 1984 the father and his new wife drove to Iowa and back to have the children, using four days out of the 20 days of visitation for driving. Earl also sought additional holiday visitation times, as well as time for members of his family to see the children when the mother brings them back to the Stanley vicinity, since he has relatives who also live in the Stanley area.

**14.** The mother's motion only asserted that she "believes the State of North Dakota is an inconvenient forum for these current proceedings under the provisions of the Uniform Child Custody Jurisdiction Act" and requested that the court either dismiss the proceeding or enter a stay upon the condition that the father's motion be commenced in the State of Iowa.

**15.** N.D.C.C. § 14–14–07
*"Inconvenient forum.*
"1. A court which has jurisdiction under this chapter to make an initial decree or a modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
      \*    \*    \*    \*    \*    \*
"3. In determining whether it is an inconvenient forum, the court shall consider whether it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others, whether:
"a. Another state is or recently was the child's home state;
"b. Another state has a closer connection with the child and his family or with the child and one or more of the contestants;
"c. Substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

Thus, upon remand here, I would not consider it essential for the trial court to expend further effort in basic jurisdictional analysis. Of course, the trial court would be free to properly consider the mother's motion asking it to exercise its discretion, under the "most convenient forum" provisions of the U.C.C.J.A.[16] and P.K.P.A.,[17] to transfer the proceeding to Iowa.[18] Since there has been no consideration of the merits of the mother's motion, because of the trial court's abrupt dismissal of the father's motion to expand visitation for lack of jurisdiction, we need not address or decide the matter of declining jurisdiction on a discretionary basis upon inconvenient forum grounds. That should now be considered by the trial court upon remand.

LEVINE, J., concurs.

"d. The parties have agreed on another forum which is no less appropriate; and

"e. The exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 14–14–01.

"4. Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

"5. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may (a) dismiss the proceedings, or (b) stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

\*     \*     \*     \*     \*     \*

"8. Upon dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact or, if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the

court administrator or other appropriate official for forwarding to the appropriate court."

16. op. cit.

17. 28 U.S.C. § 1738A(c)(2)(D)(i), "... or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, ...."

18. Alternatively to exercising discretion to defer to the Iowa courts as a more convenient forum, the trial court has power to use other tools in the exercise of its own jurisdiction such as taking testimony in Iowa (N.D.C.C. § 14–14–18) or requesting an appropriate Iowa court to hold hearings or have studies made there (N.D.C.C. § 14–14–19). See also N.D.C.C. § 14–14–20. Such alternatives, as well as declining to exercise its jurisdiction, may be more appropriate in considering change of custody motions, than on motions to expand or modify visitation rights where most of the facts concerning only the parent with visitation are focused in North Dakota. Those are considerations for the trial court in the exercise of its discretion, however, and we need not decide them at this point in this case.