*In re* MARRIAGE OF JANET PAVELCIK, Petitioner-Appellee, and JO-
SEPH PAVELCIK, Respondent-Appellant.

First District (2nd Division)   No. 84—1669

Opinion filed November 26, 1985.

Jeffrey M. Leving, of Chicago, for appellant.

Crowley & Crowley, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The instant case involves a child custody modification action between Janet Pavelcik, the petitioner-mother, and Joseph Pavelcik, the respondent-father. The circuit court, on motion of the petitioner, entered a finding of *forum non conveniens* and transferred the matter to the courts of Missouri, where the petitioner and the children have resided since shortly after the September 1979 dissolution of the parties' marriage. Respondent appeals, contending that: (1) the trial court retained continuing jurisdiction over custody in the dissolution decree, which jurisdiction he validly invoked; (2) that once the trial court commenced hearings on his motion to modify visitation, it was obligated to see that matter through to completion, and that petitioner's motion for a finding of *forum non conveniens* was accordingly untimely; and (3) that the court's action, deferring to the courts of Mis-

souri, was contrary to the purposes of the Uniform Child Custody Jurisdiction Act (UCCJA). Ill. Rev. Stat. 1983, ch. 40, par. 2101 *et seq.*

The facts of the case are not substantially in dispute. The parties' marriage was dissolved on September 17, 1979. As part of the dissolution decree, the court granted custody of the parties' three minor children to the petitioner. The children's names and ages at that time were: Ellen, age 12; Noelle, age 10; and Anthony, age 5. Respondent was denied any visitation with his two daughters, the trial court finding that "visitation would be exceedingly traumatic to said minor daughters"; respondent was granted only limited, supervised visitation with his son. As part of the dissolution decree, the trial court explicitly retained continuing jurisdiction over the parties and the subject matter.

In December 1979, with the permission of the trial court, petitioner and the children moved to the St. Louis, Missouri, area, where they have since resided. On June 28, 1982, respondent initiated proceedings to modify his visitation rights. That motion, as well as numerous other motions, were still pending in December 1983, when petitioner filed her motion for a finding of *forum non conveniens*, asking that the matter be moved to the Missouri courts. That motion was granted on January 24, 1984.

Prior to transferring the cause to Missouri, the trial court had entered several orders regarding the litigation. The trial court had ordered that petitioner bring her son to court, that respondent be allowed supervised visitation with him in accord with the original dissolution decree, that petitioner bring all three children to court and that the children then be interviewed by a doctor. The record on appeal does not reflect that any evidence was heard regarding these orders; the implication of the record supplied by appellant is that only argument was offered prior to the above orders. In any event, however, the court had taken no action concerning modification of the original custody determination. The court merely transferred the matter to Missouri.

In reaching its decision, the trial court noted that the children had been living in Missouri for over four years, that their school records, medical records, institutional records, friends, acquaintances and maternal grandparents were all in Missouri, and that based on this, Missouri was the most appropriate forum to litigate any alteration in visitation. The court also noted that the UCCJA permitted an Illinois court to decline to exercise jurisdiction under such circumstances. (Ill. Rev. Stat. 1983, ch. 40, par. 2108.) The court denied respondent's mo-

tion to reconsider this ruling on June 12, 1984, and respondent thereafter appealed.

The instant case is governed by the UCCJA, a fact which both parties rely on as part of their respective arguments. It is clear that this is a child custody matter, as defined by the UCCJA. (Ill. Rev. Stat. 1983, ch. 40, pars. 2103.02, 2103.03.) As such, the key question before this court is whether the trial court complied with the statute when it entered its finding of *forum non conveniens*.

■■ ■ Any analysis of the propriety of the finding of *forum non conveniens* must logically begin with an appreciation of the purposes and policies which the UCCJA was designed to implement. Those guidelines were codified in section 2 of the UCCJA. (Ill. Rev. Stat. 1983, ch. 40, par. 210—2.) That section enumerates a variety of objectives contemplated by the legislature for providing a cogent, effective and intelligent forum for dealing with child custody problems. The overriding objective, which pervades the entire statute, is that the trial court should accord primary, if not dispositive, weight to the best interests of the child. (*Siegel v. Siegel* (1981), 84 Ill. 2d 212, 225, 417 N.E.2d 1312; *In re Marriage of Thompson* (1981), 96 Ill. 2d 67, 77, 449 N.E.2d 88, *cert. denied* (1983), 464 U.S. 895, 78 L. Ed. 2d 232, 104 S. Ct. 242.) Thus, the statute directs that courts should:

"1. Avoid jurisdictional competition and conflict with courts of other states *** which in the past has resulted in the shifting of children *** with harmful effects on their well-being;

2. promote cooperation with the courts of other states to the end that a custody judgment is rendered in that state which can best decide the case in the interest of the child;

3. assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state." (Ill. Rev. Stat. 1983, ch. 40, pars. 2102(a)(1 through 3).)

The touchstone consideration of the trial court must therefore be a determination of what court is most able to act in the best interests of the child. Accord, *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 225, 417 N.E.2d 1312.

■ The "inconvenient forum" section of the UCCJA was plainly designed to effectuate these policy objectives by granting authority to the trial court to yield jurisdiction to another court which is in a supe-

rior position to determine the merits of the dispute. That portion of the UCCJA provides:

> "(a) A court which has jurisdiction under this Act to make an initial or modification judgment may decline to exercise its jurisdiction any time before making a judgment if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
>
> (b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child." (Ill. Rev. Stat. 1983, ch. 40, sec. 2108(a)(b).)

That section goes on to list the factors that a trial court should consider in reaching a determination with respect to *forum non conveniens*. Ill. Rev. Stat. 1983, ch. 40, par. 2108(c).

■ The language of this section makes it clear that the trial court is required to engage in an often difficult balancing act: while the court is obligated to act in the best interests of the child, it is called upon to exercise its discretion based upon motions filed not by the children, but by the parents. The parents' interests often do not parallel, or even approximate, the child's interests. In such circumstances, the child often becomes the pawn in a contest between the parents, to his or her detriment. Indeed, given the plethora of post-decree pleadings relating to custody filed in this case, that seems to be the fact here. A custody determination is always a difficult one; it becomes even more difficult when the parties seek to tar each other with claims of harm to the child. This places an even more significant responsibility on the trial court to ensure that the hearing is held in the *locus* best able to gather information requisite to the interests of the child.

In *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 417 N.E.2d 1312, the court dealt with a factually similar question. There, the parties had divorced in 1972 in Illinois. In 1974, the mother and children moved to California with the permission of the trial court. In 1977, the mother initiated proceedings in California to limit the father's visitation rights, which motion was granted upon the father's default. The father initiated proceedings in Illinois challenging the California proceedings. The Illinois Supreme Court noted:

> "Illinois, which was once the 'home state' (Ill. Rev. Stat. 1981, ch. 40, par. 2103.04), had been superceded in that capacity by California. Information concerning the children's mental and physical well-being, their education and training, their personal

relationships with friends and some family members, all of which is vital to intelligent custody judgments, is much more readily available to the California courts. True, contesting visitation, support and custody questions in California, rather than Illinois, will be more inconvenient and costly for the father if such contests become necessary. It is, however, an unpleasant fact that, in a highly mobile society with a high incidence of marital instability, problems such as this are not infrequent. Section 601 [Ill. Rev. Stat. 1981, ch. 40, par. 601] was designed to provide that custody disputes be resolved in the forum where the facts necessary to a determination of the children's best interests are most readily accessible." (*Siegel v. Siegel* (1981), 84 Ill. 2d 212, 228).

The same analysis must guide our determination of the dispute herein.

◼ Here, the children had been living in Missouri for over four years at the time the motion to transfer was filed. Indeed, they had been residing there for 2½ years at the time the petition for modification of visitation was filed. Obviously, any records of their schooling would be found in Missouri, as would any medical records for their care. The record reflects that one of the children had been institutionalized; while the record is largely silent as to the cause or nature of this institutionalization, the relevant information on this matter may be found in Missouri. The children's maternal grandparents are in Missouri, as likely will be any friends. Information concerning these matters will not merely be helpful to an intelligent custody determination, but essential. The coalescence of these factors more than amply justifies the trial court's decision to defer to the courts of Missouri on this matter. (Accord, *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 417 N.E.2d 1312; *Flesner v. Houser* (1982), 104 Ill. App. 3d 904, 443 N.E.2d 720.) It is clear that the trial court was mindful of the considerations enumerated in the UCCJA in declining the exercise of jurisdiction over the matter, and that the facts amply support its conclusion that Missouri was the most appropriate forum to litigate any child custody matter.

Respondent's three assignments of error, while interesting, do not directly address the best interests of the children. Rather, they focus on the question of continuing jurisdiction. This question is only marginally relevant to a disposition of this case.

◼ Respondent first contends that the trial court retained continuing jurisdiction of the matter in the dissolution decree, and that he validly invoked that jurisdiction when he filed his petition to modify

visitation. There is a superficial appeal to this argument; clearly, the trial court did retain jurisdiction by its explicit language in the dissolution decree. That fact, however, has been superseded by the intervening fact that the children and petitioner-mother had absented themselves from Illinois, with the permission of the court, after the dissolution decree was entered. This intervening fact, coupled with the length of the children's stay in Missouri, obviate the language of the dissolution decree, at least to the extent that compliance with that decree would frustrate the objectives of the UCCJA.

Respondent cites *Kelly v. Warner* (1983), 119 Ill. App. 3d 217, 460 N.E.2d 329, in support of his position. We find that case to be distinguishable from the instant case. In *Kelly*, the parties lived in Illinois at the time the dissolution decree was entered. Ms. Warner was granted custody of the two children, and Mr. Kelly was granted visitation rights. Ms. Warner later remarried and moved to Indiana with the permission of the Illinois court. Mr. Kelly remained in Illinois, and his visitation rights were modified accordingly. Ms. Warner filed a later pleading in Illinois seeking to severely restrict Mr. Kelly's visitation, which motion was granted. Mr. Kelly appealed, and the Third District Appellate Court reversed with specific directions as to the modification of Mr. Kelly's visitation rights.

During the pendency of that appeal, Mr. Kelly had moved to Indiana also. Upon remand, Ms. Warner filed a motion asking that the matter be transferred to Indiana, which motion was granted. Mr. Kelly then appealed the transfer matter. The appellate court stated:

"Since the trial court retained jurisdiction, it was under a duty to obey the mandate set forth in our [first] opinion *** We directed the court to conduct further proceedings and take into account any changes in circumstances. Instead, the trial court conceded jurisdiction to Indiana *** Perhaps our mandate was misunderstood. On remand, it was out intent that the trial court finish what it had started by making a final adjustment of Mr. Kelly's visitation rights in accord with the views expressed in our opinion." (*Kelly v. Warner* (1983), 119 Ill. App. 3d 217, 220.)

It is obvious from the appellate court's decision that its primary concern was Ms. Warner's attempt to forum-shop. The court had indicated in its first decision which way the case was to be resolved, and at that point Ms. Warner sought deference to the courts of Indiana. It was for that reason that the trial court was ordered to "finish what it had started"; to do otherwise would frustrate the court's mandate, as well as contravene the policies of the UCCJA, which directs the court

to abstain from encouraging relitigation. (Ill. Rev. Stat. 1983, ch. 40, par. 2102(a)(6).) We do not believe that the court in *Kelly* contemplated a mechanical analysis, whereby a court would be required to see to conclusion any matter validly brought before it despite the fact that the court of another State had a superior position to gather the evidence and closer connections to the children. Accordingly, to the extent that respondent believes that the holding in *Kelly* was in favor of indefeasible jurisdiction in these matters, we disagree. Indeed, in *Siegel*, the Supreme Court explicitly noted that the "continuing jurisdiction" principle was superseded by statutory provisions in child custody matters. *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 228.

■ *Kelly* is further distinct from the instant factual situation in that the trial court had already heard evidence and ruled on the merits of the case. Here, however, the trial court had made no substantive ruling on the merits of the case, and had heard no evidence on the substantive claim. Rather, the trial court in this case had only ruled on relatively minor prefatory matters regarding visitation and had not reached the merits of the actual claim. Accordingly, *Kelly* is inapplicable to the case at bar. The trial court was still obligated to rule in the best interests of the children; the mere fact that it had retained jurisdiction at an earlier proceeding did not obviate that requirement.

This same consideration undermines respondent's second contention: that petitioner's motion for a finding of *forum non conveniens*, coming well over a year after respondent had initiated modification of visitation proceedings, was untimely. Respondent cites *In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 77-78, *cert. denied* (1983), 464 U.S. 895, 78 L. Ed. 2d 232, 104 S. Ct. 242, in support of his argument.

■ *Thompson* is distinguishable from the instant case. In *Thompson*, respondent waited until after all the evidence had been submitted prior to requesting that the matter be transferred to Michigan. In fact, the motion was not made in that case until closing arguments began. Because of these facts, the court held that the motion for transfer to Michigan was untimely. The same cannot be said here, where the motion was filed before the trial court had taken any substantial action on the merits of the case. Moreover, in *Thompson*, the court noted that Illinois would have been the most appropriate forum in any event (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 77); this cannot be said with equal force here. Accordingly, *Thompson* does not support the respondent's claim.

Petitioner's delay in requesting deference to Missouri is troubling; nonetheless, this challenge to the trial court's action does not address

the appropriate question: the propriety of the finding of *forum non conveniens*. While petitioner certainly could have brought this matter to the court's attention at an earlier juncture, and probably should have done so, this failure does not afford respondent any relief.

■■ This conclusion finds its basis in both *Thompson* and the UCCJA. In *Thompson*, the court noted that had respondent requested deference "before the court heard the case on the merits *in its entirety*, she may have had a valid claim." (Emphasis added.) (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 77.) Here, the court had not heard the case on the merits in its entirety; thus, a motion for transfer could be entertained. As to the UCCJA, the statute provides that the trial court may decline the exercise of jurisdiction at any time prior to rendering judgment; moreover, the statute empowers the court to do so *sua sponte*. (Ill. Rev. Stat. 1983, ch. 40, pars. 2108(a), (b).) If the court may validly do so on its own motion, then clearly the fact that one of the parties has failed to act expeditiously in requesting such action will not preempt the court from so doing.

Such a conclusion is inevitable given the nature of the proceedings. The litigants are the parents. The beneficiaries of the action, however, are the children. While the parents may initiate litigation, and may seek benefit from that litigation in terms of expanded visitation or custody, or seek to deprive one another thereof, the court is still directed to place the interests of the children before other considerations. Indeed, the UCCJA is instinct with the obligation placed upon the court that it make the best interests of the child the paramount consideration in its deliberations regarding custody matters. A trial court may not be aware, at the outset of the proceedings, that another forum is more appropriate to the children, and the parents may not bring this to the court's attention. The UCCJA still requires that the trial court decline jurisdiction once it is aware that it may be an inconvenient forum, and that the court of another State is more appropriate. Thus, while the petitioner herein may have moved in an untimely fashion for transfer, that lack of diligence does not defeat an otherwise appropriate action by the trial court. Since the trial court explicitly acted with the childrens' best interest in mind, and that conclusion is amply supported by the record, petitioner's delay in filing the motion, although untimely, did not render the finding of *forum non conveniens* inappropriate.

■■ Finally, respondent contends that petitioner was engaged in "forum-shopping," contrary to the purposes of the UCCJA. Our previous analysis on the propriety of the ruling itself is applicable to this issue. More importantly, we fail to discern how petitioner was forum-

shopping. This is not a case, like *Thompson* or *Kelly*, where a party waited to see "which way the winds were blowing" before deciding that she wanted to change venue. Rather, the record reveals that the court had taken no substantive action on the merits of modification. Indeed, the record contains repeated assertions by *respondent* that the trial court was prejudiced against him. It hardly seems likely that petitioner would "forum-shop" away from the trial court if it was prejudiced against respondent. In any event, however, the record does not substantiate respondent's claim that petitioner was attempting to evade orders of the trial court. What few rulings the trial court had made regarding visitation were neutral, prefatory orders. Respondent will not be prejudiced by proceeding in Missouri, since Missouri would likely require the same information the trial court here was seeking in its orders (a doctor's report on the childrens' condition). Missouri is the forum with the closest connections to the children. Under the UCCJA, it is the site preferred for litigation on such matters.

For these reasons, the judgment of the circuit court, declining the exercise of jurisdiction in deference to the courts of Missouri, is affirmed.

Affirmed.

STAMOS, P.J., and BILANDIC, J., concur.