Renae DENNIS, Plaintiff and Appellee,

v.

Earl DENNIS, Defendant and
Appellant.

Civ. No. 11059.

Supreme Court of North Dakota.

May 13, 1986.

Benjamin C. Pulkrabek, of Pulkrabek &
Tuntland, Mandan, for plaintiff and appellee.

Judith A. Atkinson, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Earl Dennis appealed from a district court judgment in which the court declined to exercise jurisdiction over Earl's motion to modify the child visitation provisions of a divorce decree. We affirm.

Earl and Renae Dennis were divorced in Burleigh County in September 1981. Renae was awarded custody of the parties' two minor children and Earl was granted visitation rights. It was contemplated at that time that Renae would move from North Dakota, and the decree contained alternative visitation provisions which were to take effect when she did so. Renae and the children have resided in Iowa since October 1981.

In July 1984, Earl filed a motion requesting modification of the original decree to allow increased visitation. The district court, by order dated September 13, 1984, held that it lacked jurisdiction to rule on the matter. Earl appealed from that order and we remanded for the district court to consider whether it had "significant connection" jurisdiction pursuant to Section 14–14–03(1)(b), N.D.C.C. *Dennis v. Dennis,* 366 N.W.2d 474 (N.D.1985).

On remand, the district court held an evidentiary hearing on the issues of signifi-

cant connections and inconvenient forum. See Sections 14–14–03(1)(b) and 14–14–07, N.D.C.C. The court determined that it had personal and subject-matter jurisdiction, but concluded that North Dakota was an inconvenient forum and that Iowa was the appropriate forum to exercise jurisdiction over this case.

The sole issue presented on appeal[1] is whether the court abused its discretion in determining that North Dakota is an inconvenient forum in which to litigate Earl's motion to modify the original custody decree. Resolution of this issue requires an analysis of the provisions of Chapter 14–14, N.D.C.C., which is our State's adoption of the Uniform Child Custody Jurisdiction Act [U.C.C.J.A.].

▪ Section 14–14–07, N.D.C.C., contains the relevant inconvenient-forum provisions:

"1. A court which has jurisdiction under this chapter to make an initial decree or a modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

\* \* \* \* \* \*

"3. In determining whether it is an inconvenient forum, the court shall consider whether it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others, whether:

"a. Another state is or recently was the child's home state;

"b. Another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"c. Substantial evidence concerning the child's present or future care, pro-

tection, training, and personal relationships is more readily available in another state;

"d. The parties have agreed on another forum which is no less appropriate; and

"e. The exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 14–14–01."

In essence, Chapter 14–14, N.D.C.C., requires that a court make a two-pronged inquiry to determine whether it should entertain a child-custody proceeding having interstate implications: it must first determine whether it has jurisdiction under Section 14–14–03 [U.C.C.J.A. § 3], and, if so, the court must then determine whether it is appropriate to *exercise* jurisdiction under Section 14–14–07 [U.C.C.J.A. § 7]. See, e.g., *Barden v. Blau,* 712 P.2d 481 (Colo. 1986); *Brown v. Brown,* 195 Conn. 98, 486 A.2d 1116 (1985); *In re Marriage of Bolton,* 690 P.2d 401 (Mont.1984).

▪ It is well settled that the decision whether to decline to exercise jurisdiction on inconvenient-forum grounds lies entirely within the trial court's discretion, and its decision will be reversed on appeal only for an abuse of discretion. See, e.g., *Stevenson v. Stevenson,* 452 So.2d 869 (Ala.Civ. App.1984); *Barden v. Blau, supra; Brown v. Brown, supra; Larsen v. Larsen,* 5 Kan.App.2d 284, 615 P.2d 806 (1980); *Farrell v. Farrell,* 133 Mich.App. 502, 351 N.W.2d 219 (1984); *In re Marriage of Bolton, supra; Oehler v. Clinton,* 282 S.C. 25, 317 S.E.2d 445 (1984). An abuse of discretion, which implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court, never is assumed and must be affirmatively established. *In the Matter of Estate of Vertin,* 381 N.W.2d 199 (N.D.1986); *Lange v. Cusey,* 379 N.W.2d 775 (N.D.1985).

▪ We cannot conclude that the district court abused its discretion in determining

**1.** Earl also contends that the district court erred "in holding that it did not have jurisdiction." The court, however, explicitly held that it *did* have jurisdiction, and it is clear that the court ultimately based its decision upon Section 14–14–07, N.D.C.C., the inconvenient-forum provision.

that this State is an inconvenient forum to resolve this dispute. The district court specifically considered the statutory factors contained in Section 14–14–07(3), N.D.C.C., and concluded that Iowa is the home State of the children; that substantial evidence concerning the children's care, protection, training, and personal relationships is more readily available in Iowa; and that Iowa has a closer connection with the children.[2]

A paramount consideration in the balancing of these various factors is a determination of what court is most able to act in the best interests of the children. *In re Marriage of Pavelcik*, 138 Ill.App.3d 1060, 93 Ill.Dec. 589, 487 N.E.2d 33 (1985). A court should exercise jurisdiction over a child-custody proceeding only when it is in the child's best interest to do so. See Sections 14–14–01(1)(b) and 14–14–07(3), N.D. C.C. We further note the important policy statement contained in Section 14–14–01(1)(c), N.D.C.C.:

"1. The general purposes of this chapter are to:

\* \* \* \* \* \*

"c. Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; ..."

Under the circumstances presented in this case, we conclude that the trial court did not abuse its discretion when it declined to exercise jurisdiction based upon its de-

termination that Iowa is a more appropriate forum. Accordingly, the judgment is affirmed.

ERICKSTAD, C.J., and GIERKE and LEVINE, JJ., concur.

MESCHKE, Justice, concurring.

In July, 1984, Earl Dennis asked the district court to extend his visitation rights with his two growing children, Mike and Marisa, beyond the twenty days set in the divorce decree issued by that court in 1981. Regrettably, two years and two appeals later, Earl has not yet had a hearing on the merits of his request.

When Earl and Renae were divorced in North Dakota in September, 1981, Renae was awarded custody of Mike (4½ months old) and Marisa (two years old). As contemplated, Renae promptly moved to Iowa with the two children. In keeping with the then tender years of the children, the decree authorized only ten days visitation for Earl in 1982 and 1983, increasing to 20 days a year in 1984 and 1985. Earl paid for Renae to fly back to North Dakota with the children for visitation in 1982. He paid her expenses to drive the children to North Dakota for visitation in 1983. In 1984, Earl and his new wife drove to Iowa and back to have the children, using four days out of the twenty for travel.

Earl moved to extend visitation through the three summer months and to share additional time at holidays and on other visits by the children with maternal relatives in North Dakota. Renae resisted, requesting that the trial court "exercise its discretionary power to decline jurisdiction," emphasizing that she and the children now have "significant connections with the State of Iowa." The trial court refused to

2. In *Dennis v. Dennis*, 366 N.W.2d 474, 477 (N.D.1985), some of the members of this court expressed the view that a determination of jurisdiction for purposes of modifying visitation is different from a determination of jurisdiction for a change of general custody. On remand, the trial court disagreed with that analysis. Nevertheless, when an inconvenient-forum issue is raised the various factors which can be considered by the trial court may vary in relevance

depending upon whether change of custody or modification of visitation rights is at issue. However, our reading of the opinion of the trial court, delivered from the bench, as well as the formal order of the trial court, leaves no doubt that the trial court concluded that Iowa is the more convenient forum regardless of whether change of custody or modification of visitation rights is at issue.

consider Earl's motion upon the grounds that it had "no jurisdiction to handle the matter" because North Dakota was no longer the "home state" of the children.

We reversed, but, in three separate opinions, we could not agree on a clear rationale concerning jurisdiction. *Dennis v. Dennis*, 366 N.W.2d 474 (N.D.1985) (*Dennis I*). Chief Justice Erickstad's opinion rejected "continuing jurisdiction" because Iowa was the current home state of the children, but remanded for a "redetermination of the jurisdictional issue" under the alternative "significant connection" jurisdictional formulation (subsection (1)(b) of Section 14–14–03). 366 N.W.2d at 476–477. My opinion, joined by Justice Levine, emphasized "continuing jurisdiction" (subsection (1)(a)(2)) while one of the contesting parents (Earl) continued to live in the state first issuing a custody decree, but recognized that the trial court was "free to properly consider the mother's motion asking it to exercise its discretion, under the 'most convenient forum' provisions of the U.C.C. J.A. and P.K.P.A., to transfer the proceeding to Iowa." 366 N.W.2d at 482. My opinion mildly suggested in a footnote that "declining to exercise its jurisdiction ... may be more appropriate in considering change of custody motions, than on motions to expand or modify visitation rights where most of the facts concerning only the parent with visitation are focused in North Dakota." 366 N.W.2d at 482.

Justice VandeWalle's opinion, joined by Justice Gierke, joined in remanding for consideration of the "significant connection" jurisdictional test, but dealt clearly and directly with visitation: "The trial court ... should ... retain jurisdiction to modify the provisions for visitation, as opposed to custody, when Earl continues to reside in North Dakota and the visitation will take place in North Dakota." 366 N.W.2d at 477. Justice VandeWalle stressed that "the courts of the State in which the divorce decree was granted, in which the noncustodial parent continues to reside and in which the children will be visiting, are in the best position to determine whether or not that visitation is in the best interests of

the children and whether or not it should be modified." 366 N.W.2d at 477–478. (I now concur in that well-expressed view. The course of this case upon remand prompts regret that I did not fully endorse that view in *Dennis I*.)

Upon remand, faced with this array of views, the trial court held another hearing on "jurisdiction". The trial court concluded that it had "jurisdiction over the parties and the subject matter hereto," and went on to conclude "that the Court has the right to decline to exercise this jurisdiction;" "that Iowa is the children's home state;" "that Iowa is the State that has significant contacts with the children;" "that substantial evidence concerning the children's present or future care, protection, training and personal relationships is most readily available in the State of Iowa;" and "that North Dakota is an inconvenient forum and the State of Iowa is the appropriate forum to have jurisdiction of this case."

On this appeal, Earl argues that the trial court committed several errors: "The lower court erred in holding that it did not have jurisdiction; erred in the application of it's standards of significant connections and in not setting the standards to be applied by it's ruling on significant connections referred to in NDCC 14–14–03(1)(b); erred in it's ruling on most convenient forum; erred in the application of the standards of closer connections to the jurisdiction of the court; and erred in failing to recognize the continuing jurisdiction of the court."

Given the different views of this Court about initial jurisdiction, it is not surprising that the trial court considered jurisdiction further. Since a majority of this court did not recognize "continuing jurisdiction," it is also not surprising that the trial court apparently relied upon the "significant connection—substantial evidence" test to find jurisdiction. While I adhere to my opinion in *Dennis I*, that there is continuing jurisdiction that accompanies the continued residence of one of the custodial contestants in

the state which was the first to adjudicate custody, I have no difficulty in accepting any analysis that yields jurisdiction, even if I deplore the lack of judicial economy in taking the "long way around." Therefore, I concur with Justice VandeWalle that the trial court concluded that it did have jurisdiction. Appellant's argument that the trial court failed to do so is plainly mistaken. Rather, it is clear that the trial court exercised discretionary power to decline jurisdiction under the inconvenient forum provisions of the U.C.C.J.A., which is also recognized in the P.K.P.A. (See footnotes 15, 16 and 17, 366 N.W.2d at 481).

I concur with Justice VandeWalle that a trial court's decision to decline jurisdiction on the grounds of inconvenient forum is discretionary. But, I do not agree that it is *"entirely* within the trial court's discretion," as he states it. Judicial discretion is not judicial license. Judicial discretion can only be exercised for sound reasons, not spurious ones. And, the reasons for exercise of discretion should be sufficiently expressed, if not readily apparent, to enable meaningful appellate review.

The trial court's findings do not recognize that visitation in North Dakota is the subject of the motion. They do not treat the location of the evidence which is often most important in considering visitation: the suitability of the noncustodial parent and his home for visitation. The trial court did not recognize the import of Section 14–05–22(2), N.D.C.C.:

"After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health."

Although the findings do look to some of the factors which may be considered under the statute, I am greatly troubled by the lack of depth in the findings. At least, findings should recognize those factors most relevant to the particular case for which they are made.

In accepting the findings, it appears to me that Justice VandeWalle is subordinating his own clearly expressed views to accord the greatest possible appellate deference to a discretionary disposition by an able and experienced trial judge. Since I did not join in Justice VandeWalle's clear expression in *Dennis I*, that the courts of this state are in the best position to determine whether or not additional visitation is in the best interest of the children, I share responsibility for not providing sufficient guidance to the trial court on remand. So, I cannot fairly second guess this exercise of discretion, either.

Therefore, I reluctantly concur in affirming the trial court's discretionary declination of jurisdiction in this case. It is high time some court got to the merits of this visitation matter. Iowa courts are equally capable of expanding visitation to implement our statutory mandate "to maintain a parent-child relationship that will be beneficial to the child." Iowa's statutory presumption may even be stronger:

"Consideration shall be given to the child's need for close contact with both parents and recognition of joint parental responsibility for the welfare of a minor child." 39 Iowa Code Annotated, Section 598.21(4).

LEVINE, J., concurs.